## Case No. 11,740.

RHOADES et al. v. SELIN et al.

[4 Wash. C. C. 715.] 1

Circuit Court, E. D. Pennsylvania.  Oct. Term, 1827.

DEEDS — EVIDENCE — RECORDING — ACKNOWLEDGMENT — PROOF OF PAPERS — RESULTING TRUST — FRAUD — RES JUDICATA — PRIVILEGE OF ATTORNEY — DEPOSITION.

1. Objections to an exemplification of a copy of a deed of partition admitted to record, that no proof of the execution of the deed, by one of the joint tenants, was made to authorise the recording as to him; and secondly, that the certificate of the recording officer annexed to the copy, that it is a true copy of the record and original deed, so far as it is legible; the objections going to the effect of the deed only, overruled; and not to its admissibility.

2. To authorise the recording of a deed by the law of Pennsylvania, a certificate of its acknowledgment by a justice of the peace of the state of New York, and a certificate of the court of common pleas of that state, that he was such justice is not sufficient; unless it also certify that he was a chief officer in the county.

3. It is no objection to the exemplification, that the justice who wrote and certified the acknowledgment did not also state himself a justice of the peace in the certificate; if the omission be supplied by proof of that fact at the trial. If he do so style himself, that is prima facie evidence of the fact.

[Cited in Sheldon v. Van Buskirk, 2 N. Y. 476.]

4. The extent of the privilege of the client to exclude the examination of his attorney as a witness, and what papers of his client he may or may not be compelled to produce, on notice, to be read in evidence.

5. A paper produced on notice by the adverse party, must be proved by him who offers it, in like manner as if he had himself produced it; unless the party producing it be a party to the instrument, or claim a beneficial interest under it.

6. There can be no resulting trust in favour of a third person, when the deed is taken in the name of the principal purchaser, and the money is not paid by the asserted cestui que trust.

7. Courts of common law and equity have concurrent jurisdiction in cases of fraud.

8. Where a matter is adjudicated by a court of peculiar and exclusive jurisdiction, the sentence is conclusive, when the same matter comes incidentally before another court, as to the matter decided, not only between the same parties, but strangers; unless it can be impeached for fraud.

9. Upon this principle a fraudulent sale and conveyance by an administrator, under a decree of the orphan's court, though the same be confirmed by a decree of this court, may be questioned, and declared bad, in an ejectment or other action, as well at law as in equity.

[Cited in Day v. New England Car-Spring Co., Case No. 3,688.]

[Cited in Mitchell v. Kintzer, 5 Pa. St. 219; Tebbetts v. Tilton, 31 N. H. 288.]

10. The difference between the sentence of a court of exclusive and concurrent jurisdiction, as to its binding effect on another court.

11. Depositions taken under a commission to another state, cannot be read unless proof be given that a copy of the interrogatories, and a written notice of the rule, and of the names of the commissioners, was served on the opposite party, or his attorney, according to one of the rules of this court.

12. It is no objection to a deposition that a material part of the evidence comes out under the general interrogatory.

13. A commission issued to take depositions under a rule to take them at Selinsgrove, and indorsed "Commission to Selinsgrove." It should appear by the certificate of the commissioners, or otherwise, that the depositions were taken at the place indicated, or they cannot be read.

14. The rule as to depositions taken under a commission within the Western district of Pennsylvania, more than one hundred miles from Philadelphia, as to their being absolute, or de bene esse.

15. The causes on the docket of the Eastern district of Pennsylvania, at the time of the passage of the act of 1824 [4 Stat. 50], which added certain counties to the Western district, but which were not retained, as not being directed by that act to be sent to the Western district; are to be considered, as to every incident belonging to them, such as taking depositions, executions, &c. as if the act had never passed.

[Criticised in U. S. v. Dawson, 15 How. (56 U. S.) 493. Cited in Culver v. Woodruff County, Case No. 3,469.]

This was an ejectment [by lessee of Daniel Rhoades and Anthony Snyder] to recover two hundred and fifty acres of land in Union county. The lessors of the plaintiffs claim as the representatives of John Snyder. The title of the plaintiffs was as follows: A warrant dated the 17th of March, 1762, which, after reciting a prior order of the proprietor to the surveyor general, dated ———. 1754, to survey two thousand acres for Conrad Wiser, which had not been complied with; directs the said quantity of land to be surveyed for the heirs and representatives of the said Conrad Wiser, then deceased. Surveys under the above warrant were accordingly made; that is to say, for six hundred and seventy-two acres, on the 8th of June, 1762, and returned into the office within a few days afterwards; for seven hundred and forty-six and a half acres on the 9th of March, 1762, and returned on the 15th of July following; for four hundred and fourteen and a half acres on the 4th of June, 1762, and returned the 15th of July following; for three hundred

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

and forty-four acres on the 10th of September, 1794, and returned the 22d of April, 1795; and for two hundred and sixty-five acres on the 19th of October, 1802, and returned the 9th of December following. A patent for the seven hundred and forty-six and a half acres was granted on the 12th of March, 1771, and for two hundred and sixty-five acres on the 10th of December, 1802; the first, to the heirs and devisees of Conrad Wiser; and the second to Conrad Wiser. Another patent for three hundred and forty-four acres, dated the 24th of April, 1795, issued to Adam Fisher, as assignee of the heirs and devisees of Conrad Wiser. The will of Conrad Wiser, dated in 1759, devises to his sons Philip, Frederick, Peter, Samuel and Benjamin, and to his daughters, Maria, the wife of Mr. Muhlenburgh, and Mary, the wife of ——, all those his lands, lying beyond the —— mountains, and all his grants, or rights to land lying beyond said mountains, to be divided amongst them, two eighth parts to Philip, and one eighth part to each of his other children.

The plaintiffs then offered a deed of partition between the children of Philip, (he being dead) and the other devisees of Conrad Wiser. This was objected to for the following reasons: 1. The paper offered is the exemplification of a deed of partition which was admitted to record, on the oath of John Boyd, that he was well acquainted with the hand writing of William Scull, one of the attesting witnesses, who was then dead, and that his name subscribed as a witness to the said deed, is the hand writing of the said Scull, and that he had heard and believed that all the other attesting witnesses were dead. The objection was, that it appeared by the attestation that Scull was not a witness to the execution of Jabez, one of the heirs of Philip Wiser, whose name is mentioned in the deed as a party. It was insisted that a deed of partition, from its nature, was inoperative unless it be executed by all the joint tenants, or tenants in common. 2. The certificate of the officer annexed to the copy, is, that it is a true copy of the record and original deed, so far as it is legible.

THE COURT directed the paper to be read, observing, that the objections, if well founded, go to the effect of the deed, and not to its admissibility.

The part of each of the tenants in common is, by the above deed, described by metes and bounds; that allotted to Peter is two hundred and seventy-nine acres, part of the seven hundred and forty-six and a half acre tract, and of the seven hundred and twenty-five acre tract. Evidence, by the record, was given of a judgment against Peter Wiser, and of a sale of his part of the land in 1784, under a venditioni exponas, to John Snyder, to whom the sheriff conveyed the same, by deed, bearing date the 23d of August, 1786. John Snyder, it was proved, died intestate. The heirs of John Snyder were proved to be his daughters Mary, wife of Samuel Bayer; Susan,

wife of Daniel Rhoades, one of the lessors; Elizabeth, wife of J. C. Wiser; Margaret, wife of Edward Atlee; and Anthony, the other lessor.

The plaintiffs then gave in evidence a deed by Jacob Kendlick and his wife, who was the widow of John Snyder, releasing all their right of dower in the above land to the lessors of the plaintiff. Also a deed by J. C. Wiser and wife, dated the 6th of December, 1810, to Daniel Rhoades, of their interest in this land; another by Atlee and wife, dated the 17th of July, 1823, to the lessors of the plaintiff for all their interest.

The counsel for the plaintiff then offered in evidence the exemplification of a deed, bearing date the 3d of August, 1811, by William Hall and wife, (the latter being another of the children of Mr. Snyder,) to the lessors of the plaintiff, conveying to them all their interest in the premises in dispute. This was objected to because, 1. The acknowledgment being taken by a justice of peace in the state of New York, as certified by the clerk of the court of common pleas for —— county, under the seal of the county, he does not state himself in his certificate to be a justice of peace. And 2. Because the clerk does not certify that he was a chief officer in that county, or that there was no other officer superior to him; as required by the act of this state of the 24th of February, 1770. 1 Smith's Laws, 307. See 5 Bin. 296.

D. P. Brown and Rawle & Binney, for plaintiffs.

Bellas, Kittera & Chauncey, for defendants.

WASHINGTON, Circuit Justice. The first objection is not, in our opinion, well taken. Where the officer who takes the proof or acknowledgment of a deed, styles himself in his certificate an officer, such as the law authorises to do the act, that is prima facie evidence of the fact, not only to authorise the recording officer to record the instrument, but in any court of justice. If that fact be not certified by the officer who takes the proof, or acknowledgment, the fact that he was such officer may be supplied by other evidence, such as the certificate of the clerk of the court under the seal of the court, so as to legalize the recording of the deed in this state. The second objection seems to be supported by the case of McIntire v. Ward, 5 Bin. 296, and must therefore prevail.

The plaintiffs' counsel then called upon Mr. Bellas, one of the defendants' counsel, to give evidence, which was objected to. But THE COURT overruled the objection, and stated that the witness was not to disclose any thing confided to him by his clients; but that he was bound to testify as to any matter which in any other way had come to his knowledge.

THE COURT also decided that this witness might be asked whether he had a certain survey or diagram in his possession, and if he answered that he had, he might be immedi-

.ately served with a notice to produce it if he had it in his immediate possession; so as, on refusal to produce it, to let in parol evidence of its contents; and that it was no ground of objection, that the paper so called for, was delivered to him by his client. 2 Starkie, Ev. pt. 4, pp. 398–400; 3 Starkie, Ev. pt. 4, pp. 1722, 1724, 1725. The possession of the attorney is that of his client, and he is within the meaning of the fifteenth section of the judiciary act of 1789; and as to the notice, the act requires only due or reasonable notice, which this is, where the paper is in court in the possession of the counsel.

The diagram above mentioned being produced, the plaintiffs' counsel offered to give it in evidence, which was objected to, unless the plaintiffs should give such proof to render the instrument evidence as would have been required, if the paper had been originally produced, and offered in evidence by the plaintiffs' counsel.

In answer to this objection were cited: Phil. Ev. 343, 344; 2 Term R. 41.

WASHINGTON, Circuit Justice. There seems to be much incongruity in the doctrine, that an instrument which would not be evidence, if offered by the defendant or by the plaintiff, if originally in his possession, without further proof to make it so, should, by a kind of legal legerdemain, become evidence without the further proof, if it be called from the possession of one of the parties, by the other party who offers it in evidence. If indeed, the party producing the instrument, on notice, be a party to it, or claims a beneficial interest under it, these facts may well dispense with the necessity of giving further proof, because of such privity or interest, and not because of the possession of the instrument by the party against whom it is offered in evidence. In this case, the instrument obtained from the defendants' counsel, and offered in evidence, is not a deed, or paper, which on its face or by proof, is connected with the title of the defendants. It is an unauthenticated draft, or representation of Selinsgrove; by whom, or under what authority made, does not appear. It is not a title paper of any kind, and there are no parties to it. The plaintiffs therefore cannot use it in evidence, without giving such further proof as would render it admissible if they had produced it in the first instance as a paper of their own. 1 Starkie, Ev. 365; 3 Starkie, Ev. 1722, 1723.

THE COURT, upon the motion of the defendants' counsel, directed the jury to find a verdict in favour of three of the defendants, against whom no evidence whatever had been given to prove that they had at any time been in possession of any part of the premises in dispute, in order that the other defendants might be at liberty to examine them as witnesses; which was accordingly done.

The title of the defendants was as follows: Letters of administration upon the estate of John Snyder to three persons, and their petition to the orphan's court of Northumberland county, setting forth that the personal estate of John Snyder was insufficient to pay his debts, to which was annexed a statement of his debts, and of his personal assets, and praying that his real estate might be sold. The order of that court to sell one hundred and seventy acres, the remainder of the land formerly Peter Wiser's, (eighty-two acres having been sold and conveyed by John Snyder in his life time), which remainder includes the town of Selinsgrove, the premises now in dispute. This order was made in October, 1790, and the land was accordingly sold at public auction to Anthony Selin, the highest bidder; and the sale being confirmed by the orphan's court, the administrators conveyed the same to the purchaser, by deed bearing date the 12th of June, 1791.

The plaintiffs' counsel then offered to prove that Anthony Selin, on the day, and at the time of sale, prevented any person from bidding for the land by acts and threats of violence, and by declaring that he intended to purchase the land for the children of John Snyder.

This was objected to on the other side, upon the ground: That the evidence offered, tended to prove a resulting trust in the children of John Snyder, in which case their only remedy was on the equity side of this court. 2. That if the purpose for which the evidence was offered, was to fix a fraud upon the purchaser in purchasing and obtaining a conveyance of the land, that too is examinable only in equity. 3. At all events, the decree of the orphan's court, which confirmed this sale is conclusive, and cannot be examined into, in a collateral action upon the ground of fraud.

Cases cited in support of the objection: 1 Har. Ch. Prac. 68; 8 Johns. 487; 3 Johns. 432; 8 Term R. 818; 5 East, 132, 139; 11 Serg. & R. 422; 16 Johns. 302; 1 Pet. 292, 298, 299.

Plaintiffs' counsel, in answer, cited, contra: Cooper v. Galbraith [Case No. 3,193]; 1 Fonbl. Eq. 112; 3 Bl. Comm. 531; Bright v. Eynon, 1 Burrows, 390; 3 P. Wms. 157.

WASHINGTON, Circuit Justice. The first and second reasons for this objection have been very properly abandoned by the counsel for the defendant, who concluded the argument. There is no case to be found to sanction the idea of a resulting trust where the conveyance is taken by the nominal purchaser to himself, and the purchase money is not paid by the asserted cestui que trust, who, so far from claiming under the purchase as made for his benefit, claims in hostility to it, and under his prior legal estate in the premises so purchased. As to fraud, Lord Mansfield, in the case of Bright v. Eynon, 1 Burrows, 390, when he stated that courts of common law and equity had a concurrent jurisdiction to suppress and relieve against fraud, did not declare a new doctrine; it is as ancient as the common law. The objection which is adhered to and relied upon is, that the sale having been made

and confirmed by decrees of the orphan's court, these decrees, or acts done under them, are not examinable collaterally in an action at law, upon the ground of imputed fraud. It may be observed, in limine, that if so much sanctity be attached to these decrees and the acts done under them, as to protect them against examination collaterally, upon an allegation of fraud and collusion in obtaining them, and in their execution; the objection is available in a court of equity, as in a court of law; so that the question is not whether the objection can be made in this action, but whether it can be in any other court than that in which the decrees were rendered? I take the general rule to be clearly settled by the Duchess of Kingston's Case; that where the matter adjudicated is by a court of peculiar and exclusive jurisdiction, and the same matter comes incidentally before another court, the sentence in the former is conclusive upon the latter, as to the matter directly decided, not only between the same parties, but against strangers, unless it can be impeached on the ground of fraud or collusion. The principle of that case is fully recognized by the supreme court of Pennsylvania in the case of M'Pherson v. Cunliff, 11 Serg. & R. 422; and is there applied to the orphan's courts of this state, in cases of judicial sales made under decrees of those courts, upon the petition of administrators, in the cases provided for by the laws of this state. The learned judge, who delivered the opinion of the court in that case, observes, that "the inquiries upon an ejectment are, was there an administrator, and order to sell, such as would authorise the administrator to make sale; was the sale fair?" Again he observes, "where there is a direct sentence on the very point, such is to be received as conclusive evidence, not to be impeached from within, but like all other acts of the highest judicial authority is impeachable from without; and though it is not permitted to show that the court was mistaken in the original action, it may be shown that they were misled by some collusive act between the parties." "Collusion being a matter extrinsic of the cause, may be gone into by a stranger, and tried by a jury. It may be here inquired into, whether there was collusion between the administrator and the first purchasers in obtaining this decree."

These quotations, in aid of the general doctrine before laid down, seem to be conclusive. This is not a case in which the question of fraud in the sale of the land was, or could be tried and decided by the orphan's court; nor are we prepared to say, that, if the heirs of John Snyder had been parties to those proceedings, and the alleged collusion in obtaining the order for a sale, and the fraud in making it had been litigated and decided by that court; that decision would not have bound all other courts in which the same question should come incidentally to be tried. But the proceedings in that court by an administrator, in a case like the present, are always ex parte, and the question of collusion and fraud were

not, and could not be, examined and adjudicated upon, so as to bind persons who were not parties before the court. The only question now to be decided is, whether a party who, by fraud and violence has obtained from an administrator a conveyance for land under an order of the orphan's court, unfairly and collusively obtained, shall be allowed, in a court of law, any more than in a court of equity, to shelter himself under a title so acquired, against the heirs at law of the intestate, upon the ground that the sale had been confirmed by a sentence of the orphan's court? It seems to us that, upon the principles of eternal justice as well as upon authority, the question can admit of but one answer, and that a negative one. The evidence is therefore admissible.[2]

Depositions taken under a commission, dated the 2d of March, 1826, to Waterloo, in the state of New York, were offered in evidence by the plaintiffs' counsel, and objected to, because no proof was given that a copy of the interrogatories, and a written notice of the rule, and of the names of the commissioners, was served on the defendants or their attorney, according to the rule of this court of the 22d of May, 1805.

THE COURT sustained the objection.

Depositions taken under a commission to the same place, dated 11th July, 1824, were then read, and an objection was taken to the answer given in many of them to the general interrogatory, that the material evidence is brought out under that instead of being given to the preceding particular interrogatories; by which means the defendants' counsel were as unapprised of the matter about which the witnesses were expected to depose, as they would have been if the general interrogatory had been the only one proposed.

THE COURT overruled the objection, observing that the regular practice was to propose particular interrogatories, so as to draw from the witnesses all that they know about the matter specially inquired about, and then to subjoin a general interrogatory as to any other matter material to the party proposing it. To this interrogatory the witness may give in evidence any matter which is pertinent to the cause, which he might have done if such matter had formed the subject of a particular interrogatory. If this be not the very purpose for which the general interrogatory was introduced, it is worse than useless; be-

---

[2] The case of Blount v. Darrach [Case No. 1,567]. was decided upon the ground that, in the settlement of a guardian's account, the jurisdiction of the orphan's court is not exclusive of a court of equity; in which an original suit may be entertained to compel a settlement, and to enforce payment of any balance found to be due. The general principle on which that case was decided is, that the judgment or decree of a court of competent jurisdiction directly upon the point is conclusive between the same parties, or their privies, where the same matter comes directly in question in another court of concurrent jurisdiction.

ing calculated by its very terms to mislead the witnesses, the commissioners. and the parties.

The plaintiffs' counsel then offered to read depositions taken under a commission dated the 2d of April, 1825. The commission issued under a rule to take depositions at Selinsgrove. The commission is in general form, directing the commissioner to take depositions at such time and place as he should appoint, and is indorsed thus, "Commission to Selinsgrove." Selinsgrove is distant more than one hundred miles from Philadelphia. These depositions were objected to for the following reasons: 1. Because they were taken before Mr. Lashelles, who was of counsel with the plaintiffs in this cause. 2. Because it appears by the certificate of the commissioner that some of the depositions were taken at New Berlin, and not at Selinsgrove; and as to others of them, it is not stated where they were taken. 3. Because these depositions having been taken within the district of Pennsylvania, although within the Western district, as designated by the act of congress of ——, 1824, the depositions are de bene esse, by the provisions of the enacting clauses of the thirtieth section of the judiciary act of 1789 [1 Stat. 88].

The plaintiffs having given satisfactory proof that Lashelles was at no time attorney or counsel in this cause, no notice was taken by THE COURT of the first reason assigned in support of the objection.

WASHINGTON, Circuit Justice. The second reason assigned why these depositions should not be read, seems to the court to be well founded. Why the rule in this case pointed out, or should in any case point out, the place at which the depositions are to be taken, is not very obvious to the court. It would seem to be much less embarrassing, and equally fair to leave it to the party at whose instance the depositions are to be taken, or to the person who is to take them, to notify the opposite party of the place where they are to be taken. But where the rule designates the place, the commission, where one is issued, ought to conform to it; and if it should be general, as it is in this case, the depositions must be taken at the place indicated in the rule, or they cannot be read. It is equally necessary that it should appear by the certificate of the person taking the depositions, or by other evidence, that the depositions were taken at the place mentioned in the rule, and also at the time and place appointed in the notice of the adverse party; for otherwise it cannot appear to the court that they were regularly taken. If those facts be certified by the persons taking the depositions, such certificate is prima facie evidence of their truth.

This reason demands a more minute examination. It has been insisted by the plaintiffs' counsel, that wherever depositions are taken under a dedimus potestatem, whether within or without the district, they are always absolute; and in support of this position, the case of Sergeant's Lessee v. Biddle, 4 Wheat. [17 U. S.] 508, was relied upon. We are of opinion that the argument is not supported by the case cited. In that case the depositions were taken under a commission which issued from the circuit court for the Delaware district, to be executed in the district of Pennsylvania, and within one hundred miles from the place of trial; and the question was, whether the depositions taken under it were absolute, or only de bene esse. The solution of that question depended entirely upon the correct construction of the thirtieth section of the judiciary act of 1789. According to common usage, depositions cannot be taken and read in evidence in any case where the attendance of the witness can be obtained by the compulsory process of the court. But the enacting part of that section authorises the taking of depositions where the witness lives within the district, and beyond one hundred miles from the place of trial; notwithstanding his attendance might be enforced by a subpœna, which may issue to any distance within the district; but in such a case, and because the personal attendance of the witness may be enforced, his deposition is declared, by the enacting part of the section, to be de bene esse. If the witness live out of the district, so that a subpœna could not reach him, then, by common usage (for so we understand the expression), a dedimus potestatem might be issued, and the proviso to that section declares that the enacting clause does not extend to a case of that sort; and consequently, the depositions taken under such a commission, would be absolute, not only for the reason before mentioned, viz. that the attendance of the witness could not, until the act of the 2d of March, 1792, be enforced by subpœna, where he resided out of the district, but because the enacting clause, which declares the depositions taken under it to be de bene esse, did not apply to depositions taken under a commission to another district, or to foreign parts. The case from 4 Wheat. was confined altogether to the construction of the above section; the record not containing any particular rules of the circuit court of Delaware upon the subject of depositions. Had the question decided in that case been sent by this court to the supreme court, the decision would have been different, and yet in perfect harmony with that which was pronounced in that case; because there is a rule of this court applicable to the case of depositions taken under a commission to another district, upon which the decision would have turned. In the case of Evans v. Hettick [Case No. 4,562], decided in this court, it was stated, that if the witness live out of the district where the court sits, and more than one hundred miles from the place of trial, his deposition must be taken under a commission, and will be absolute. But this

decision was founded, not on any act of congress,·but upon a rule of this court dated the 22d of May, 1805, which declares, that "a rule for a commission to any of the United States, or to foreign parts, shall be of course, and may be entered by either party in the clerk's office, but the interrogatories must be filed in the office at the time, and a copy thereof, and a written notice of the rule, and of the names of the commissioners, must be served on the other party (or on his attorney, by the rule of the 27th of April, 1811), fifteen days at least before the commission issues, that he may file cross interrogatories, and name commissioners if he please." The depositions are absolute, because the attendance of the witnesses could not be enforced by subpœna. If the witness live in another district, within one hundred miles from the place of trial, and of course within reach of a subpœna, by virtue of the act of the 2d of March, 1793 [1 Stat. 333], the above rule extends equally to that case, being within its general expressions; but then the depositions taken in this latter case are de bene esse, not by force of any act of congress, but under the rule of the 13th of May, 1814, which declares generally "that all depositions are to be de bene esse, if the place of caption be within the reach of the process of the court." It is this rule which distinguishes this case from that of Sergeant's Lessee v. Biddle [supra].

Having thus laid down the general rules applicable to the question now under consideration, the next inquiry is, how do they apply to the present case? At the first or second session of this court which succeeded the passage of the act of congress of 1824, which added this, and other counties to the Western judicial district, we were called upon to decide whether the present action, together with some others then on our docket for trial, together with the papers belonging to them, should be sent to the Western district, or retained here? After hearing counsel on the question, the opinion of the court was, that those cases were not embraced, either by the words, or by the obvious intention and policy of the act. The cases being retained for trial in this court, they are to be considered, in relation to every incident belonging to them, as if the above act had never passed. The consequence is, that executions upon judgments rendered here, in those cases, must issue from this court, to be levied in the Western district; and in relation to the immediate subject of the present objection, the state of Pennsylvania is to be considered as forming but one district. If so, depositions taken in the Western district in those cases are de bene esse, and cannot be read; unless the non-attendance of the witness is accounted for, as in other cases where like depositions are offered in evidence.

It may not be improper to add, that depositions taken within this district, and within one hundred miles of this place, under the rule of this court of the 23d of May, 1805, do not require the authority of a commission to make them legal. That rule, as amended by that of the 13th of May, 1814, provides, that a party may take depositions of witnesses within one hundred miles of the place of holding the court, and within the district, by entering a rule in the clerk's office, giving reasonable notice, (which in no case need exceed ten days) to the adverse party, if living within one hundred miles, otherwise to him or his attorney, at the time and place of taking the depositions. If they are taken, by agreement, out of the district, the description of the judicial character to take them is to be designated in the rule; and all depositions are to be de bene esse, if the place of caption be within the reach of the process of the court.

Upon those rules, it is to be observed, that the issuing of a commission, which they do not require, cannot affect the depositions, so as to bring them within the case of Sergeant's Lessee v. Biddle; which is confined to cases where the depositions can be taken only under a dedimus, which are absolute under the act of congress, but de bene esse under the rules of this court, where the attendance of the witness can be enforced by the process of the court.

Upon this opinion being delivered, the plaintiffs' counsel consented to suffer a nonsuit.