[No. 14892.   Department Two. — December 13, 1892.]

## MARY FREEL, RESPONDENT, *v.* MARKET STREET CABLE RAILWAY COMPANY, APPELLANT.

NEGLIGENCE — ACTION AGAINST RAILWAY COMPANY — EVIDENCE — ORDER FOR DELIVERY OF PAPERS — IMPEACHMENT — INCONSISTENT STATE- MENT. — In an action against a railway company for damages for injuries received by the plaintiff because of the negligence of the defendant, it is proper for the court to compel the defendant's counsel to deliver to plaintiff's counsel a bundle of papers or package containing certain written statements of employees of the defendant in relation to the facts surrounding the occurrence which caused the plaintiff's injury, where it appears that the bundle was in the court-room, in the possession of the defendant's counsel, and that plaintiff's counsel had been allowed to ex- amine it, and desired to use it as a foundation to impeach the testimony of one of the defendant's employees, who was a witness for the defendant, and who had made one of the statements which was at variance with his testimony.

ID. — EVIDENCE — PHYSICIAN AS WITNESS — VISIT FOR REPORT TO DE- FENDANT — PRESCRIBING FOR PERSON INJURED. — It is proper for a physician to testify, in an action for damages for personal injuries, as to information acquired by him of the physical condition of the party in- jured, if he has visited such injured party upon the suggestion of the defendant, and stated to her that he came there solely and entirely at the request of the defendant to ascertain the nature and character of her injuries, for the purpose of reporting them to the defendant, and confines his conduct to such examination and report; yet where it appears that he continued to visit and prescribe for her, and that the information acquired by him was obtained while visiting her at her request and pre- scribing for her, such evidence, if objected to by her, is properly ex- cluded.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*W. H. L. Barnes,* and *Frank Shay,* for Appellant.

It was error for the trial court to require counsel for the defendant to produce and deliver to counsel for the plaintiff papers and documents belonging to the defend- ant, and intrusted to him for the purposes of the trial, in order that the plaintiff's counsel might therewith cross-examine or impeach the witness. (*Stokoe* v. *St. Paul etc. R. R. Co.,* 40 Minn. 545. See Hageman on

Privileged Communications, pp. 87–90, secs. 94, 95; p. 92, sec. 99; p. 94, sec. 102; p. 111, sec. 110, and cases cited; *Covenay* v. *Tannehill*, 1 Hill, 33; 39 Am. Dec. 287; *Rhodes* v. *Selin*, 4 Wash. C. C. 715–718.) The refusal to permit the physician who had prescribed for the plaintiff to give evidence of information acquired by him of the plaintiff's physical condition, which it was necessary for him to know in prescribing for her, was error. (*Treanor* v. *Manhattan R'y Co.*, 16 N. Y. Supp. 536; *McKinney* v. *R. R. Co.*, 104 N. Y. 352; *People* v. *Schuyler*, 106 N. Y. 306; *Marx* v. *R. R. Co.*, 10 N. Y. Supp. 159; *In re Coleman*, 111 N. Y. 220.)

*Sullivan & Sullivan*, for Respondent.

The court did not err in allowing the plaintiff's counsel to use the reports made by the witnesses to the defendant. Plaintiff certainly had the right to compel their production by notice, but the papers being in court, it was unnecessary to give such notice, and it was the duty of the defendant's counsel to produce them. (Code Civ. Proc., secs. 1938, 1985; *In re Mitchell*, 12 Abb. Pr. 249; *Whiting* v. *Barney*, 30 N. Y. 332; 86 Am. Dec. 385; Weeks on Attorneys, ed. 1892, sec. 142; *In re Whitlock*, 2 N. Y. Supp. 283; *Harrisburg Car Mfg. Co.* v. *Sloan*, 120 Ind. 156.) The court did not err in excluding the testimony of the physician, called on behalf of the defendant, as to information acquired by him of the plaintiff's physical condition. (*Hope* v. *Troy etc. R. R. Co.*, 40 Hun, 438; 110 N. Y. 643; *Record* v. *Village of Saratoga Springs*, 46 Hun, 448; *Mellor* v. *Missouri etc. R. R. Co.*, 16 S. W. Rep. 849; *Penn Mutual Life Ins. Co.* v. *Wiler*, 100 Ind. 92; *Jones* v. *Brooklyn etc. R. R. Co.*, 3 N. Y. Supp. 253; *Groll* v. *Tower*, 85 Mo. 249; 55 Am. Rep. 358; *Dotton* v. *Albion*, 57 Mich. 576.)

FOOTE, C. — This was an action for damages for injuries done the plaintiff while endeavoring to get upon the car of the defendant.

Judgment was given in favor of plaintiff, from which,

and an order refusing a new trial, this appeal is taken. The only grounds urged for a reversal of the judgment and order are:—

1. That the court erred in compelling defendant's counsel to give to plaintiff's counsel certain written statements of employees of defendant in relation to the facts surrounding the occurrence which caused the plaintiff's injury, which statements were in the possession of the defendant's counsel, and which plaintiff's counsel desired to use as a foundation to impeach the testimony of Thomas Hurley, a witness for defendant.

2. That the court erred in refusing to allow Dr. Hutchins, a physician who had prescribed for plaintiff, to give evidence of information acquired by him of her physical condition, which was necessary for him to know in prescribing for her.

The rulings of the court upon these matters were fully discussed on the motion for a new trial, and the learned judge of that tribunal gave reasons for his rulings in the premises, which read thus:—

" This is an action to recover damages for personal injuries sustained by the plaintiff. The cause was tried, and the plaintiff recovered a verdict for four thousand five hundred dollars, and the defendant now moves for a new trial.

"But two points are discussed in the defendant's brief in support of the motion: 1. It is claimed that the court erred in requiring defendant's counsel to exhibit certain papers to the plaintiff; and 2. That the court should have admitted the testimony of Dr. Hutchins.

" 1. As to the first point, it appears that during the cross-examination of James C. Gould, an employee of the defendant, and called as a witness for the plaintiff, he stated that he had obtained statements of the manner in which the plaintiff's injuries had occurred from the defendant's conductor and gripman; that he did not know where these statements were, but 'they may be upon the table, in front of defendant's counsel.' Thereupon plaintiff's counsel took from the table in front of defendant's

counsel, and from among the papers of the latter which he
was using in the case, a number of papers fastened into
one package or bundle, ' and held them up before the
witness.' The witness then identified these papers as
the reports made to defendant by these employees. The
plaintiff's counsel then asked permission of defendant's
counsel to take the papers, and the latter thereupon
stated that he could examine them during the recess.
Subsequently, when one of the defendant's employees,
Thomas Hurley, was upon the stand, and testifying on
behalf of the defendant, he was asked if the plaintiff did
not take hold of the hand-rail of the car just as the grip-
man was applying the grip,—a material circumstance.
To this the witness answered, 'No.' He was then asked
if he ever so stated, and he said he never did. There-
upon plaintiff's counsel requested of defendant's counsel
the papers previously referred to, which he had allowed
him to examine, stating that he desired to show by these
papers that the witness upon the stand had formerly
made a statement at variance with his present testimony
in the last-mentioned particular, and that the papers to
establish this fact were in the possession of the defend-
ant's counsel. The latter denied the right of counsel to
demand his private papers for cross-examination. The
plaintiff's counsel then reiterated the demand, and offered
to show, by means of a paper then in the possession of
the defendant's counsel,—the paper which he had been
allowed to examine,—that the witness had made a state-
ment at variance with the statement then made upon the
stand, and that he desired to offer it for the purpose of
impeaching the testimony thus given by him. Thereupon
the witness was further questioned, and admitted that he
did make a statement in writing to the company defend-
ant in relation to this accident, and that this statement
was sent to the office of the company; that the statement
contained an account of how the accident happened, as the
witness remembered it. Thereupon the court held that
the plaintiff's counsel was entitled to the paper; where-
upon Mr. Barnes handed the paper to Mr. Sullivan,

plaintiff's counsel, and excepted to the ruling of the court.  The witness was then confronted with the paper, and it did appear therefrom that he made therein a statement inconsistent with and contradictory to the testimony previously referred to and given by him upon this trial.

"Counsel, in support of the alleged error of the court in making this order, cites the case in 40 Minn. 545, There a release had been executed by the plaintiff to the defendant of the cause of action sued upon.  The plaintiff requested defendant's counsel to produce the release.  The defendant's counsel failed to do so, and the court held that the plaintiff was not entitled to the paper sought, but could offer parol evidence of its contents thereof.  A similar doctrine was announced in 1 Hill, 33; 4 Wash. C. C. 715.

"That decision is manifestly inapplicable to the case at bar.  There a paper had been executed by the plaintiff himself, and delivered to the defendant, with the contents of which the plaintiff was presumed to be fully acquainted.  Here, however, was a statement or account of plaintiff's injury, prepared by Mr. Gould, an employee of the defendant, and signed by Mr. Hurley, another employee, and delivered into the custody of the defendant.  This statement was in the possession of defendant's counsel upon the trial, and indeed was lying upon the desk before him when the demand in question was made.  The plaintiff could not, in the nature of things, know the contents of this paper.  It is not claimed that she had ever seen it, nor had it ever been in her possession.  It was produced for the first time by defendant's counsel.  To sanction the rule claimed by the defendant in this case would enable a litigant to suppress adverse evidence of the most important character. Here the plaintiff had a right to show, by way of the impeachment of the defendant's witness, that he had on another occasion made a statement inconsistent with his present testimony.  The law provides that where such statement is in writing, it *must be shown* to the witness,

and an opportunity afforded to the latter to explain it. Upon defendant's theory, if he were permitted to retain this paper in his possession, so that the plaintiff's counsel could not, on cross-examination, show it to the witness for the purpose of impeaching him, it would be impossible, under similar circumstances, to impeach any witness.   While a notice to produce a paper in certain cases is proper, yet in this instance the objection was not placed upon that ground.   There was no necessity of a formal notice, inasmuch as the paper, at the time the demand was made, was lying in front of the counsel in the court-room, and upon the table.   I am of opinion that no error was committed in this particular.

" 2  As to the second point, — the exclusion of the testimony of Dr. Hutchins.   Subdivision 4, section 1881, of the Code of Civil Procedure, provides that a physician cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient, which was necessary to enable him to *prescribe or act* for the patient.   The plaintiff's mother testified, on her behalf, that after her daughter's injuries she called at the office of the railroad company and requested them to furnish her daughter a doctor.   She states that she met Dr. Hutchins in the office.   The latter does not remember whether he met plaintiff's mother there or not.   It appears, however, that he did call upon the plaintiff and examined her.   When interrogated as to what was said by him to her when he entered her sick-room, he stated that he informed her that he had been sent there by the company.   After he had made such examination as he thought proper, he returned a second time.   When questioned whether he returned on the second occasion of his own motion, or at the request of the plaintiff, he was uncertain.   The plaintiff's testimony shows that Dr. Hutchins called upon her on several occasions and prescribed for her. The doctor, when questioned upon this subject, failed to remember whether he did or did not prescribe for her. He was then asked by plaintiff's counsel this question:

'It was during this time that you were making these visits *and prescribing for her* that you obtained any knowledge that you have of her case?' And his answer was: 'Yes, sir; that is all, except conversations with Dr. McLean." Upon this testimony, the court held that he should not be permitted to testify.

"This ruling is attacked upon the authority of the case of *State* v. *De Poister*, 25 Pac. Rep. 1000. That was a criminal action, — an indictment for the rape of a child seven years old. The prosecution was conducted at the instance of the parents of the child, and in the course of the trial the people called as a witness a doctor called in by the parents to attend the child; and in response to questions propounded by the prosecution, the doctor was permitted to testify as to information acquired by him in his professional capacity upon these visits. The facts there presented are entirely different from those disclosed in the case. The rule which excludes a physician from revealing the secrets of the sick-chamber may not, in the nature of things, apply to criminal prosecutions. The interests of justice oftentimes in such cases unseal the doctor's lips. As was well said by the New York court of appeals (*Pierson* v. *People*, 79 N. Y. 432), the purpose of the law in excluding the testimony of the doctor in such cases never designed to shut out evidence necessary for the proof of guilt or the punishment of crime. It was never intended 'to protect the murderer, rather than to shield the memory of the victim.'

"In civil cases, however, the rule is different. It will be observed that the rule of exclusion, by the precise terms of the statute, is confined to civil actions. The language of the statute (sec. 1881) is: 'A physician cannot be examined in a *civil* action as to any information acquired,' etc. And it will be observed that while in the Penal Code the provisions of section 1881 in relation to parties prohibited from testifying is adopted as to a husband and wife, it is not in terms adopted as to any other of the professions or classes in section 1881 enumerated.

"In this case it appears that the plaintiff requested the defendant to furnish a doctor; that in response to such request, Dr. Hutchins called upon her four or five times, and counseled with her as to her treatment, and prescribed for her. Under these circumstances, it seems to me he occupies a different position than if he had gone there originally upon the suggestion of the defendant, and stated to the patient that he came there solely and entirely at the request of the defendant to ascertain the nature and character of her physical injuries, for the purpose of reporting them to the defendant. If he had confined his conduct to such examination and such report, he should have been permitted to testify. But in this case, it appears from his own testimony that the information acquired by him was obtained while visiting and prescribing for her, and I therefore think that the proposed evidence was properly excluded.

" Motion for a new trial denied."

We are of opinion that the trial court was right in its views of the matters in dispute, and therefore advise that the judgment and order be affirmed.

HAYNES, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

DE HAVEN, J., SHARPSTEIN, J., McFARLAND, J.