## LYND v CHOCOLAY TOWNSHIP

Docket No. 84093. Submitted May 8, 1986, at Marquette. Decided July 8, 1986. Leave to appeal denied, 426 Mich 877.

Plaintiff, Karen Lynd, independent personal representative of the estate of Robert R. Lynd, deceased, brought an action in the Marquette Circuit Court against the Charter Township of Chocolay, Lawrence Dunklee, a police officer for the township, and the Michigan Department of Transportation. Plaintiff's complaint alleged negligence and intentional nuisance in connection with an accident which led to the death of her husband. The trial court, Edward A. Quinnell, J., entered a judgment of no cause of action in favor of defendants Lawrence Dunklee and the township following the return of a verdict to that effect by the jury. The trial court, sitting as a judge of the Court of Claims with an advisory jury, also entered a judgment of no cause of action in favor of defendant Michigan Department of Transportation. Plaintiff appeals from both judgments. *Held:*

1. The trial court did not err in granting the defendants' motion for the production of statements that had been given to plaintiff's counsel by five witnesses shortly after the accident.

2. The trial court properly refused to admit evidence regarding a township ordinance which prohibited parking on streets, including road shoulders, between certain hours and empowered township police with the authority to tow away any vehicle found to be in violation of the ordinance.

3. The Court of Appeals declined to consider the merits of plaintiff's argument regarding the trial court's ruling which permitted defendants' counsel to read into evidence portions of a deposition taken of Cheryl Mattson, since the Court of Ap-

REFERENCES

Am Jur 2d, Appeal and Error §§ 776, 793 *et seq.,* 801 *et seq.*

Am Jur 2d, Depositions and Discovery §§ 1, 9, 50 *et seq.*

Am Jur 2d, Nuisances §§ 1 *et seq.*

Am Jur 2d, Trial § 573.

Development, since Hickman v Taylor, of attorney's "work product" doctrine. 35 ALR3d 412.

See also the annotations in the ALR3d/4th Quick Index under Appeal and Error; Depositions and Discovery; Nuisances.

peals determined that, even if improper, the admission of such evidence was harmless beyond a reasonable doubt.

4. Reversible error did not occur in regard to the trial court's refusal to permit the introduction of testimony offered by plaintiff to rebut evidence which indicated that the snowmobile driven by plaintiff's decedent was traveling between forty-six and fifty-one miles per hour at the time of impact.

5. Any error which occurred in regard to defendants' counsel's statements drawing upon his own experience in arguing an issue before the jury was harmless beyond a reasonable doubt.

6. No error resulted from the trial court's refusal to instruct the jury as proposed by the plaintiff.

7. The trial court did not clearly err in finding that the Department of Transportation did not violate MCL 691.1402; MSA 3.996(102).

8. The Court of Appeals was not left with a definite and firm conviction that the trial court erred in rejecting plaintiff's claim that, in plowing around the Mattson vehicle and in throwing snow up, on and around same, the Department of Transportation was liable for creating an intentional nuisance in fact. The act of plowing snow around a disabled vehicle does not have the natural tendency of creating danger and inflicting injury on persons or property.

Affirmed.

1. PRETRIAL PROCEDURE — DISCOVERY — RULES OF DISCOVERY — JUDICIAL CONSTRUCTION.

Discovery rules are to be liberally construed in order to further the ends of justice.

2. PRETRIAL PROCEDURE — DISCOVERY — WORK PRODUCT — COURT RULES.

A party's claim that statements given to her counsel by witnesses shortly after the accident relevant to the pending litigation are protected from discovery as a "work product" is properly rejected where such statements could not be reproduced, if at all, without undue hardship to the party requesting discovery of the statements; a motion for the production of such statements is properly granted where "good cause" is shown (GCR 1963, 306.2, 310.1[1]).

3. EVIDENCE — APPEAL — IRRELEVANT EVIDENCE.

A trial court properly refuses to admit evidence which is found to be irrelevant (MRE 401, 402).

4. APPEAL — EVIDENCE — HARMLESS ERROR — COURT RULES.

> The Court of Appeals may decline to consider allegations of error in regard to the trial court's rulings to admit or exclude evidence where, even if improper, the error would be harmless beyond a reasonable doubt; reversible error does not occur where the outcome of the trial could not have been affected thereby (MCR 2.613[A]).

5. TRIAL — JURY TRIALS — COMMENT BY COUNSEL.

> It is inappropriate for trial counsel to draw upon his own experiences in arguing an issue before the jury.

6. TRIAL — JURY INSTRUCTIONS.

> A trial court is required to give only those jury instructions requested by the parties which accurately state the law and which are warranted by the evidence.

7. APPEAL — CLEAR ERROR — COURT RULES.

> A trial court's findings may be found not to be clearly erroneous where the reviewing court is not left with a definite and firm conviction that a mistake has been made (MCR 2.613[C]).

8. NUISANCE — NUISANCE IN FACT.

> Liability for nuisance is predicated upon the existence of a dangerous condition; a nuisance in fact is a condition which becomes a nuisance by reason of the circumstances and surroundings; an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on persons or property.

9. NUISANCE — NUISANCE IN FACT — SNOWPLOWING.

> The act of plowing snow around a disabled vehicle does not have the natural tendency of creating danger and inflicting injury on persons or property.

*David M. Savu,* for plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*), for Chocolay Township and Lawrence Dunklee.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Carl K. Carlsen* and *Brenda E. Turner,* Assistant Attorneys General, for the Michigan Department of Transportation.

Before: T. M. Burns, P.J., and J. H. Gillis and
M. J. Kelly, JJ.

Per Curiam. Plaintiff, Karen Lynd, independent
personal representative of the estate of Robert R.
Lynd, deceased, appeals as of right from a judg-
ment of no cause of action rendered in favor of
defendants Lawrence Dunklee and the Charter
Township of Chocolay following a jury trial and
from the trial court's judgment of no cause of
action in favor of defendant Michigan Department
of Transportation.

Plaintiff filed a complaint alleging negligence
and intentional nuisance in connection with an
accident which led to the death of her husband on
January 3, 1981. On that date, at approximately 7
P.M., Cheryl Mattson was driving on M-28, a state
trunkline highway in Chocolay Township, on her
way to babysit for her aunt and uncle. Mattson
experienced car trouble and pulled her vehicle to
the side of the highway just after crossing the
Chocolay River bridge. She parked the car on the
shoulder of the highway and proceeded to a
nearby house to call her uncle. Her uncle agreed
to pick her up and Mattson returned to her vehi-
cle.

Shortly thereafter, Lawrence Dunklee, a police
officer for Chocolay Township, stopped to investi-
gate upon noticing Mattson's automobile. Mattson
informed the officer that she had called her uncle
and that he was on his way to assist her. Officer
Dunklee allowed Mattson to wait for her uncle's
arrival in the police car. While waiting, the two
discussed the likelihood of vandalism and Mattson
agreed that she should have her car removed from
the side of the road as soon as possible. After
leaving Mattson to her uncle, Officer Dunklee took

no more action with regard to the vehicle, and was relieved of duty at midnight.

Later that night, Mattson's vehicle was seen by two snowplow operators employed by the County of Marquette. They concluded that the vehicle was not a hazard since it was off the traveled portion of the highway, and took no steps to have it towed.

At approximately 6:45 P.M. on the evening of January 3, 1981, plaintiff and her husband arrived at the home of friends, Mr. and Mrs. Gutzman. Mr. Gutzman and Mr. Lynd decided to go snowmobiling and left Gutzman's house about 8 P.M. Gutzman and Lynd arrived at the Crossroads Tavern between 8:45 and 9:05 P.M. They had one beer and left for Skandia.

At around 10 P.M., Gutzman and Lynd arrived at the house of another friend, Mr. Kunde. The two remained only briefly and set out for the Idle Time, another bar. They arrived at approximately 10:30 P.M. and, again, had one beer.

After leaving the Idle Time, Gutzman and Lynd went to the home of Ernest Anderson where they stayed for a short period of time and had one beer. They left Anderson's house at approximately 11:30 P.M. for a bar called Little Richard's, arriving around midnight. Lynd called his wife, and she agreed to join him.

At trial there was a dispute as to how much Lynd had to drink at Little Richard's. Gutzman claimed that Lynd had only one-half of a beer. Other testimony, however, indicated that Lynd may have had as many as four or five beers.

Between fifteen and forty-five minutes after he arrived, Lynd and a friend named Toivo Hendrickson decided to go to Tobey's Pizza on their snowmobiles. Lynd and Hendrickson left Little Richard's with the latter in the lead.

Lynd and Hendrickson followed a snowmobile trial from Little Richard's to the Chocolay River. At trial, testimony indicated that it is contrary to state law for snowmobiles to be operated on the shoulders of state trunkline highways. However, it was stated that it is permissible for snowmobiles to use the shoulder for crossing rivers and other bodies of water, provided they leave the shoulder as quickly as possible.

Hendrickson reached the Chocolay River first. He guided his snowmobile onto the bridge, crossed, and went back onto the snowmobile trail. Lynd, however, did not steer his snowmobile off the shoulder as quickly as did Hendrickson and struck the rear end of the Mattson vehicle. As a result of that collision, Lynd suffered injuries which led to his death.

Plaintiff's first argument on appeal concerns a motion which had been filed by defendants Chocolay Township and Dunklee, and joined in by defendant Michigan Department of Transportation, by which they sought to order the production of statements that had been given to plaintiff's counsel by five witnesses shortly after the accident. Plaintiff's counsel took the position that the statements constituted part of his "work product" and were thus not discoverable. Defendants argued that the statements were unique because they had been taken while memories were fresh and that they were needed for possible cross-examination. Although agreeing that the statements were not produceable under traditional discovery rules since the time for discovery had passed, the trial court ruled that the statements should be made available as a matter of trial practice, citing *People v Dellabonda,* 265 Mich 486; 251 NW 594 (1933).

We agree with plaintiff that the trial court's reliance upon *People v Dellabonda, supra,* was not

entirely appropriate since that case, being of a criminal rather than civil nature, was based at least in part on the duty of the prosecutor to introduce at trial and make available to a criminal defendant all information of pertinence. 265 Mich 500. Of relevance to the present case, however, is the *Dellabonda* Court's reliance on a California civil case, *Freel v Railway Co,* 97 Cal 40; 31 P 730 (1892), which involved a written report of an accident prepared by an employee of the defendant but which defendant refused to produce at trial for plaintiff's use. The *Dellabonda* Court quoted the following portion of the *Freel* opinion:

"This statement was in the possession of defendant's counsel upon the trial, and indeed was lying upon the desk before him when the demand in question was made. The plaintiff could not, in the nature of things, know the contents of this paper. It is not claimed that she had ever seen it, nor had it ever been in her possession. It was produced for the first time by defendant's counsel. To sanction the rule claimed by the defendant in this case would enable a litigant to suppress adverse evidence of the most important character. Here the plaintiff had a right to show, by way of the impeachment of the defendant's witness, that he had on another occasion made a statement inconsistent with his present testimony. The law provides that where such statement is in writing, it *must be shown* to the witness, and an opportunity afforded to the latter to explain it. Upon defendant's theory, if he were permitted to retain this paper in his possession, so that the plaintiff's counsel could not, on cross-examination, show it to the witness for the purpose of impeaching him, it would be impossible, under similar circumstances, to impeach any witness."

The *Dellabonda* Court continued:

"It may be laid down as a general rule applicable to all jurisdictions that when a document is properly sought as evidence to be used upon the trial of a cause its production will always be enforced. The production of a document may be required for the impeachment of a witness." 4 Encyclopedia of Evidence, pp 812, 813. [265 Mich 507.]

In a case from this Court, *Peters v Gaggos,* 72 Mich App 138; 249 NW2d 327 (1976), the plaintiff in a malpractice case learned that numerous statements concerning the events leading up to her husband's death had been obtained from the defendant doctors and other employees of the defendant hospital soon after the event by an investigator employed by the defendants' insurance company. Plaintiff brought a motion to compel production of these statements, which was denied by the trial court. On appeal, we reversed, noting Michigan's "strong historical commitment to a far-reaching, open and effective discovery practice" and that "discovery rules are to be liberally construed in order to further the ends of justice." 72 Mich App 142. The Court rejected the defendants' claims that the statements were protected as a "work product" under GCR 1963, 306.2 because, having been taken shortly after the incident, the statements could not be reproduced, if at all, without "undue hardship." The Court noted that, in light of their unique nature, the statements would be useful for impeachment purposes and would be material for trial preparation. Thus, the plaintiff had also established the "good cause" requirement for the production of statements under GCR 1963, 310.1(1). 72 Mich App 148-149.

We believe the same result should obtain here. We also reject plaintiff's objection that the statements were not signed by the witnesses in ques-

tion and were poorly transcribed since the defendants did not attempt to introduce the statements into evidence. Rather, they were used only for impeachment, in which case the witness would merely have to indicate that his or her statement was not accurately transcribed, if that were true. We find no error.

Plaintiff next complains of the trial court's refusal to admit evidence regarding a Chocolay Township ordinance which prohibited parking on streets, including road shoulders, between the hours of 1:00 A.M. and 7:00 A.M. The ordinance empowered township police with the authority to tow away any vehicle found in violation of the ordinance. Plaintiff sought the introduction of this evidence in an effort to show that Officer Dunklee, having the authority to remove Mattson's vehicle from the road, was negligent in failing to do so. The trial court ruled that the ordinance was irrelevant since the evidence overwhelmingly established that the accident occurred prior to 1:00 A.M. Plaintiff now argues that there was testimony from one officer indicating that the accident occurred after 1:00 A.M., and thus the trial court's ruling took a factual question away from the jury.

We find no error since, even accepting the existence of competent evidence placing the time of the accident after 1:00 A.M., the simple fact is that Officer Dunklee went off duty at midnight. Therefore, between the time that Mattson parked her vehicle on the shoulder of M-28 and the time that Officer Dunklee went off duty, the township ordinance did not grant him the authority to have the vehicle towed. The ordinance was therefore irrelevant under the facts presented since it did not tend to establish that Officer Dunklee acted negligently. The ruling to exclude this evidence was proper. MRE 401, 402.

Plaintiff next objects to the trial court's ruling which permitted defendants' counsel to read into evidence portions of a deposition taken of Cheryl Mattson. The deposition was taken in connection with a separate action in which this plaintiff sued Ms. Mattson for damages arising from the accident. We decline to consider the merits of plaintiff's argument because, even if improper, the admission of this evidence was harmless beyond a reasonable doubt. The facts brought out by Mattson's deposition were also shown at trial by other competent testimony. For example, the portion of Mattson's deposition which plaintiff points to as being prejudicial was her statement that she did not turn on her emergency flashers because her car was sufficiently illuminated by the street light she parked near. However, Officer Dunklee also testified that Mattson's car was illuminated by a streetlight, and thus no prejudice resulted from the admission of Mattson's deposition. *Wright v Delray Connecting R Co,* 361 Mich 619, 628-629; 106 NW2d 247 (1960).

The next assignment of error concerns the trial court's refusal to permit the introduction of testimony offered by plaintiff to rebut evidence which indicated that the snowmobile was traveling between forty-six and fifty-one miles per hour at the time of impact. This evidence came in the form of testimony offered by defendants' expert witness. The witness admitted that his estimate of the snowmobile's speed was dependent upon his assumption that the throttle "shut down" on impact. This assumption allowed the expert to calculate the decedent's speed by concluding that the distance traveled after impact was due to the momentum of the snowmobile.

To rebut this testimony, plaintiff proposed to examine a lay witness who would testify that he

inspected the snowmobile in question and discovered that the throttle was wide open. The witness, James Gutzman, admitted that he had not examined the snowmobile directly after the accident and thus he had no way of knowing if the controls were moved when the machine was taken from the accident site. Defense counsel objected to the testimony, arguing that, due to an earlier court ruling, their expert had not been permitted to examine the snowmobile and that Gutzman's testimony was a surprise. The trial court ruled in defendants' favor, stating that plaintiff should have disclosed to defendants whether a defect in the machinery affecting the speed analysis existed, and that further examination of the snowmobile might reveal that the throttle was not in fact in an open position.

Again, we decline to consider the merits of plaintiff's contention that the trial court abused its discretion since, even if the failure to admit this rebuttal evidence was error, the error would be harmless beyond a reasonable doubt. The issue with which the evidence described above was concerned was that of the decedent's comparative fault in bringing about the accident. However, since the jury found that the defendants were not negligent and had not created, maintained, or continued a nuisance, the question of comparative fault was never reached. Thus, since the outcome of the trial could not have been affected by the exclusion of the testimony in question, reversible error did not occur. MCR 2.613(A).

Next, plaintiff points to certain remarks made during closing argument by counsel for the defendants as requiring reversal. The statements were in regard to the question of alcohol consumed by the decedent before the accident:

> As Mr. Holmes told you, and as I think you
> know by common sense anyway, when you drink
> alcohol, whether it be beer or anything else, the
> first few drinks you have, they start impairing
> your judgment, you inhibitions. Later on, your
> motor ability is affected, and you become—slur
> words, stumble. We have seen people like that.
>
> I know a couple of you on the jury don't drink
> and maybe the reason you don't is because you
> don't like to see people who do. I don't know. But I
> know when I drink, my judgment is affected, my
> inhibitions are brought down. And I sometimes say
> and sometimes do things that I would not do
> without that alcohol.

While we agree that it is inappropriate for trial
counsel to draw upon his own experiences in argu-
ing an issue before the jury, we must again note
that the remarks to which plaintiff now objects
concerned only the issue of the decedent's compar-
ative fault in bringing about the accident. Since
none of the defendants were found to have been
guilty of negligence or of creating or maintaining
a nuisance, the question of comparative fault was
never considered by the jury. Any error was thus
harmless beyond a reasonable doubt. *Reetz v Kins-
man Marine Transit Co,* 416 Mich 97, 102-103; 330
NW2d 638 (1982).

Plaintiff's next claim of error concerns certain
jury instructions which were proposed by plaintiff
but were refused by the trial court. The first claim
of error concerns the following instruction which
was given to the jury:

> We have several statutes in the State of Michi-
> gan that might or might not apply in this case.
> One statute is Section 694 of the Motor Vehicle
> Code, and it provides in part as follows: Whenever
> a vehicle is parked or stopped upon a highway,
> whether attended or unattended during the period

between one half hour before dusk and one half hour before dawn, there shall be displayed upon the left side of such vehicle one or more lamps projecting a white or amber light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle and projecting a red light visible under like conditions from a distance of 500 feet to the rear of such vehicle.

Now, this statute applies equally to a car parked upon the shoulder of a highway, and a car parked upon the shoulder of a highway is required by law to have a red light illuminated and visible 500 feet to the rear of the vehicle between dusk and dawn as noted by this statute.

The trial court denied plaintiff's request that the following be added to the above-quoted instruction:

The evidence in this case is uncontradicted that the Mattson vehicle was parked on the shoulder of Highway M-28 with no lights on it for a period of about 5½ hours before this accident, and I instruct you that the Mattson vehicle was therefore illegally parked in violation of the statute.

The court further instructed the jury as follows:

Another statute of the State of Michigan provides as follows: Whenever any police officer finds a vehicle standing upon a highway in violation of the provisions of this chapter, such officer is hereby authorized to remove such vehicle or require the driver or other person in charge of the vehicle to move the same to a position off the paved or improved or main traveled part of such highway.

Sub-paragraph B of the statute says: Whenever any police officer finds a vehicle unattended upon any highway where such vehicle constitutes an obstruction to traffic, such officer is hereby authorized to provide for the removal of such vehicle to the nearest garage or other place of safety.

So, sub-paragraph A of that section provides

that if the vehicle is standing upon a highway in violation of the Motor Vehicle Code, the officer is authorized to remove the vehicle or require the driver or other person in charge to move the vehicle to a position off the paved or improved or main traveled part of the highway.

If the vehicle finds—excuse me. If an officer finds a vehicle unattended upon a highway where the vehicle constitutes an obstruction to traffic, then the officer is authorized to remove it to a garage or other place of safety.

Plaintiff's request to add the following language was also denied:

Since I have already instructed you that the Mattson vehicle was parked upon the shoulder of the highway in violation of the provisions of the Motor Vehicle Code, I also instruct you that under § 673(a) of the Motor Vehicle Code, Defendant Dunklee did have the authority to order the Mattson vehicle towed away when he came upon it at 7:24 P.M. on the night of the accident.

We find no error. A trial court is required to give only those instructions requested by the parties which accurately state the law and which are warranted by the evidence. *Body Rustproofing, Inc v Michigan Bell Telephone Co*, 149 Mich App 385; 385 NW2d 797 (1986). The instructions requested by plaintiff were not accurate statements of the law, but rather amounted to an attempt to take from the jury the factual issues which were properly presented for its consideration. Whether Mattson's vehicle was illegally parked and whether Dunklee had the authority to remove the vehicle from the road shoulder were questions of fact to be decided by the jury in light of the statutes read to them. Therefore, no error resulted from the trial court's refusal to instruct the jury as proposed by the plaintiff.

Plaintiff's next issue relates to her claim of

negligence against the Michigan Department of Transportation. Plaintiff argues that when the snowplow operators failed to take action to have Mattson's vehicle removed from the side of the road they violated an internal Michigan Department of Transportation policy concerning unattended vehicles. Plaintiff argues that this failure to follow its own internal policy establishes negligence on behalf of the Michigan Department of Transportation.

We disagree. In her complaint against the Michigan Department of Transportation, plaintiff's claim of negligence was not premised upon the MDOT's failure to follow internal policies and procedures, but, rather, upon its alleged failure to "maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel." MCL 691.1402; MSA 3.996(102). Assuming, without deciding, that the snowplow operators did violate an MDOT policy to notify the township police of unattended vehicles, this fact does not, in and of itself, establish that the MDOT failed to maintain the highway in *reasonably* safe repair and in a condition *reasonably* safe for public travel. The real question then is whether the trial court's finding that defendant MDOT did not violate MCL 691.1402; MSA 3.996(102) was clearly erroneous. MCR 2.613(C). We conclude that it was not clearly erroneous for several reasons. First, the Mattson vehicle was only parked on the shoulder of M-28 for a period of hours before the accident occurred. Second, several witnesses testified that the presence of unattended vehicles on the shoulder of the highway was not an unexpected occurrence. Third, the vehicle was located on the shoulder of the highway, and did not interfere with the flow of traffic. Thus, while it can be assumed that the presence of Mattson's vehicle on the shoulder of M-28 affected the safety of the highway, we cannot conclude that the highway was no longer

*reasonably* safe for public travel. Therefore, we are not left with a definite and firm conviction that a mistake has been made. *Henderson v Biron,* 138 Mich App 503, 507; 360 NW2d 230 (1984).

Plaintiff's final argument is that the trial court clearly erred in rejecting her claim that, in "plowing around the Mattson vehicle and in throwing snow up, on and around same," defendant MDOT was liable for creating an intentional nuisance in fact. As noted in *Rosario v Lansing,* 403 Mich 124; 268 NW2d 230 (1978), liability for nuisance is predicated upon the existence of a dangerous condition. A nuisance in fact is a condition which becomes a nuisance by reason of the circumstances and surroundings. Further, an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property. 403 Mich 132-133; *McKee v Dep't of Transportation,* 132 Mich App 714; 349 NW2d 798 (1984).

In rejecting plaintiff's claim of nuisance, the trial court noted trial testimony indicating that the presence of automobiles on shoulders of highways was to be anticipated and expected at all times of the year, at all hours of the day and night, and under all weather conditions. We find it also noteworthy that the Mattson vehicle was illuminated by a nearby street light. Further, the decedent's companion at the time of the accident testified that he observed the Mattson vehicle parked at the side of the road and had "no problem with the car." Given this evidence, we are not left with a definite and firm conviction that the trial court erred in its finding. Rather, we must conclude that the act of plowing snow around a disabled vehicle does not have the natural tendency of creating danger and inflicting injury on persons or property. *Henderson v Biron, supra.*

Affirmed.