PEOPLE *v.* DELLABONDA.

1. CRIMINAL LAW—HOLDING ACCUSED FOR TRIAL.
   Good reason to believe the accused guilty of offense with which
   he is charged must exist in order that he may be held by the
   examining magistrate for trial.

2. SAME—PROBABLE CAUSE.
   Probable cause for holding accused for trial is a reasonable
   ground of suspicion supported by circumstances sufficiently
   strong in themselves to warrant a cautious man in the belief
   that accused is guilty of the offense with which he is charged.

3. SAME—PROBABLE CAUSE—DETERMINATION OF MAGISTRATE—ABUSE
   OF DISCRETION.
   Probable cause is primarily a question for consideration and de-
   termination by the examining magistrate upon the facts of
   each case and his decision will not be disturbed except in case
   of clear abuse of discretion.

4. SAME—PROBABLE CAUSE—EVIDENCE—FIRST-DEGREE MURDER.
   Evidence *held*, sufficient to support determination of examining
   magistrate that probable cause existed for holding accused for
   trial on first-degree murder charge.

5. SAME—EVIDENCE—STATEMENTS OF BYSTANDERS—RES INTER ALIOS
   ACTA.
   Testimony as to statements of bystanders not made in presence
   of accused or called to their knowledge should have been ex-
   cluded under the rule of *res inter alios acta.*

6. SAME—EVIDENCE—PROSECUTOR'S ARGUMENT—PREJUDICIAL ERROR.
   Use and misquotation of testimony, admitted in violation of rule
   of *res inter alios acta*, in prosecutor's opening argument as
   proof of connecting link between accused and shooting was
   prejudicial error.

7. EVIDENCE—CONSPIRACY—QUESTION FOR JURY.
   Testimony of bystander as to statement "stick around, you will
   see some fun," made by one claimed to be in conspiracy with
   accused was admissible if alleged author of statement was a
   conspirator and whether said remark was made by a con-
   spirator or an outsider was a question for the jury.

8. SAME—BELIEF—RUM-RUNNING.

Testimony of police detective that "we believed certain persons were engaged in rum-running with" accused, being conclusion of witness and collective belief of police force and based on undisclosed facts, was error but not prejudicial enough under record presented to warrant reversal on that ground alone.

9. WITNESSES—IMPEACHMENT—COLLATERAL MATTERS.

A witness may not be impeached on a collateral matter.

10. SAME—IMPEACHMENT—INDICTMENT FOR ANOTHER CRIME—PREJUDICIAL ERROR.

Reception of certified copy of indictment for illegal sale of narcotics against accused was prejudicial where effect of admission of such evidence was to impeach him on a collateral matter.

11. SAME—IMPEACHMENT—PRIOR WRITTEN STATEMENT.

The same questions must be asked witness sought to be impeached as are asked of impeaching witness but the rule is inapplicable where prior written statement of witness was under control of prosecution and defense was denied access to it and right to introduce it in evidence.

12. SAME—CROSS-EXAMINATION—PURPOSE.

Cross-examination of a witness is permissible to lay before jury anything tending to contradict, weaken, modify or explain testimony of witness on direct examination or to affect his credibility.

13. SAME — CROSS-EXAMINATION — IMPEACHMENT — PRIOR WRITTEN STATEMENT.

A witness may be impeached on cross-examination by showing improbability of his story by means of prior inconsistent written statement made shortly after event occurred.

14. CRIMINAL LAW—SHOWING OF WHOLE TRANSACTION.

Object of prosecution of accused is to show the whole transaction whether it tends to prove guilt or innocence and prosecutor has no right to suppress testimony but defendant may show balance of transaction whether known to prosecutor or not.

15. WITNESSES—CROSS-EXAMINATION—MATTER OF RIGHT.

Cross-examination on matters in issue or directly relevant to the issue is a matter of right.

16. SAME—IMPEACHMENT—PRIOR WRITTEN STATEMENT—SUPPRESSION.
    Official written report by policeman, a claimed eyewitness to
    shooting of other policemen, was admissible on cross-examina-
    tion in impeachment of writer and suppression of the report or
    its contents was error.

17. SAME—WRITTEN STATEMENT—LOSS—PROOF OF CONTENTS.
    Former assistant prosecuting attorney who conducted examina-
    tion of accused was properly called by counsel for accused in
    order to show existence, loss and contents of report by police-
    man, an alleged eyewitness, made shortly after the shooting of
    his fellow officers.

18. CRIMINAL LAW—TRIAL—CIRCUMSTANTIAL EVIDENCE—INSTRUC-
    TIONS.
    Failure to give requested instructions as to circumstantial evi-
    dence *held*, not error where proper instructions were given on
    subject of crime charged and its essential elements, reasonable
    doubt was correctly defined and proof beyond a reasonable
    doubt was required of each essential element of crime charged.

19. SAME—CAUTIONARY INSTRUCTIONS—CIRCUMSTANTIAL EVIDENCE.
    Cautionary instructions should be given in all cases where guilt
    or innocence of accused depends entirely upon circumstantial
    evidence.

20. SAME—REASONABLE DOUBT—ESSENTIAL ELEMENTS OF CRIME—
    PARTICULAR FACTS.
    Particular facts and circumstances claimed by prosecution need
    not be proved beyond a reasonable doubt but essential elements
    of crime charged must be so proved.
    SHARPE, J., dissenting.

Appeal from Wayne; Merriam (DeWitt H.), J.
Submitted October 13, 1933. (Docket No. 122, Cal-
endar No. 36,436.) Decided December 19, 1933.

Frank Salimone and Nick Dellabonda, *alias* Dia-
mond Bill, were convicted of first-degree murder.
Defendant Salimone died pending appeal. Re-
versed, and new trial granted.

*Anthony Maiullo* (*Maurice H. McMahon* and
*Stuart W. Hill*, of counsel), for appellant.

*Patrick H. O'Brien,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Frank Schemanski, William D. Brusstar* and *Edmund E. Shepherd,* Assistants Prosecuting Attorney, for the people.

POTTER, J.   Defendant Dellabonda, convicted of first-degree murder of Claude Lanstra, June 1, 1930, in Grosse Pointe township, Wayne county, appeals, claiming the trial court should have granted a motion to quash the information; errors in the introduction of testimony, the charge of the court to the jury, and in failure to charge the jury as requested.

June 1, 1930, about 2:30 a.m., two patrolmen of the Grosse Pointe Park police force were shot and killed.   One Frank Salimone and appellant were charged therewith, and on trial convicted.   The examining magistrate, finding the offense to have been committed, and reasonable cause to believe the accused guilty thereof, bound defendants over to the circuit court for trial, where an information charging them with murder was filed July 16, 1930, whereupon defendants moved to quash the information because of the insufficiency of the evidence before the examining magistrate, and the failure of such evidence to establish cause to believe defendants guilty of the offense.   A motion for a separate trial of each defendant was made.   Notice of alibi was filed by defendant Salimone.   Both the motion to quash and the motion for separate trials were denied.   November 19, 1931, the case came on for trial in the circuit court before a jury, and December 21, 1931, a verdict of guilty of murder in the first degree was returned.   January 7, 1932, a motion for a new trial was made, and later additional affidavits in support thereof were filed.   January 14, 1932, both defendants were sentenced to be confined

in the Michigan State prison at Jackson for the term of their natural lives. February 10, 1932, motion for a new trial was denied, and application for leave to appeal filed March 2, 1932. Defendant Salimone is now dead.

1. To authorize the examining magistrate to bind appellant over for trial there must have been good reason to believe appellant guilty of the crime charged. Some cases hold a *prima facie* case against the accused must be made out. This court has not defined what constitutes probable cause, leaving each case to be determined upon its facts. Bouvier defines probable cause as, "A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that a person accused is guilty of the offense with which he is charged." 3 Bouvier's Law Dictionary (Rawle's 3d Rev.), p. 2728.

At the time of the examination of appellant there was proof the two policemen had been murdered. There was testimony by Arnold, the fisherman, appellant was at the river bank on the night in question when the automobiles of rum-runners were chased by Federal officers; that appellant then had a gun which he pulled from his belt and showed to Arnold, saying, "I guess this is ready for action." After which he ran across the field with the gun in his hand. After the shooting it appeared appellant was away for some time or secreted. The car which the people claimed was used at the time of the killing belonged to Samuel Ricca. It appeared to have been shot at. A number of empty brass pistol shells were found on the floor of the car. The deceased was killed by a 45-calibre pistol bullet. There was

other testimony tending to connect appellant with the case. Primarily the question of probable cause is for the consideration of and determination by the examining magistrate. This court may not agree with the findings of such magistrate but it has no right to substitute its judgment for his except in case of a clear abuse of discretion. We cannot say there was an abuse of discretion on the part of the examining magistrate and decline to hold he erroneously bound appellant over for trial.

2. It is claimed the court erred in not excluding the testimony of Hugh Anderson that while on the street prior to the shooting someone said, "There they are." Anderson had testified he and other witnesses for the people and other persons not definitely identified were, prior to the shooting, standing on the street near where it subsequently occurred; that Robert Collier and James Carlozzi drove up in a Chrysler coupe, that Collier asked if we saw any cars coming up from the river and asked what they looked like and we told him. The statement someone said "There they are" was not made in the presence of appellant nor was it called to his knowledge. The witness testified Carlozzi turned to Collins and said, "That is Frank driving." All this testimony was objected to for defendants as incompetent conversation between third persons not in the presence of defendants, and when the witness testified someone unknown said "There they are" counsel for defendant moved to strike out such testimony. It is not shown to have been made by either Collier or Carlozzi. This testimony was clearly within the exclusionary rule of *res inter alios acta,* elucidated and applied in *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich. 99, where

a witness testified against objection as to what some unidentified party said, and this court said:

"When the witness, S. H. Coon, was on the stand, he was asked the question, which I think entirely proper: 'Was your attention at the time called to the fact, whether or not the train came in without sounding the bell or whistle?' To which his reply was: 'It was talked of at the time, that the train came in without ringing the bell.' And, in reply to a similar question, George W. Coon says: 'My attention was called to it; I heard someone say it was not rung.' Each of these replies was objected to, and in each case it is evident that the witness, instead of confining himself to a proper answer to the question, was allowed to bring before the jury the statements of persons who were not only not sworn, but whose names, even, were not known. It was impossible that such statements should be without influence upon the jury, especially as what these unknown persons are reported to have said had a tendency to support a portion of the sworn testimony against another portion upon a disputed point. And, as this testimony from the Coons was incompetent and inadmissible for any purpose, I do not think the error committed in admitting it was cured by the instruction of the judge to the jury that they ought not to consider it as proof of a substantive fact, as it was only proper as showing that the attention of witnesses was called to the ringing, or not ringing, of the bell."

Though this testimony was improperly admitted and should have been excluded, the people contend its reception was not prejudicial. That depends upon the use made of it. What use was made of this testimony? The acting prosecuting attorney in his opening argument said:

"They described to you how this Chrysler car drove up, and they described to you how the Chrys-

ler car was parked. They told you that Carlozzi and Collier were there. They were not men, members of the jury, that were interested in whether Carlozzi was dead or alive. They were not men who were interested in whether Collier was dead or alive. They were not men who were interested in whether or not Mangiaponi was dead or alive. They were not interested in whether or not Tupancey was dead or alive. They were interested, if you please, ladies and gentlemen, I submit, in telling you the truth as they saw it there. Didn't they describe to you how those men were there on the sidewalk? How the inquiries were made by Collier and Carlozzi as to what they had seen, as to whether they had seen a Federal car, or as to whether they had seen cars come up from Jefferson avenue or below Jefferson avenue from the river. They described to you how Collier says, 'Stick around, you are going to see some excitement.' I wonder what they had in mind. They described to you how one of these men was there. And one of them exclaimed as this Cadillac coupe drove up there, 'This is the follow car.' "

In the people's argument this seemingly unimportant remark improperly admitted, attributed to no one, is made the connecting link between appellant and the shooting. It being claimed Dellabonda was at the riverfront armed with a 45-calibre pistol; that Frank was defendant Salimone; that Salimone was driving one car and the follow car was coming up from the river. Not only was the testimony incompetent but it was misquoted to the jury by the acting prosecuting attorney and as used was prejudicial.

3. The people claimed both Salimone and Dellabonda were engaged in a conspiracy to violate the United States tariff act, the United States prohibition act and the prohibition act of the State of Mich-

igan; that this conspiracy was of such a nature that it contemplated homicide if necessary; that in pursuance of such conspiracy respondents and others were armed with revolvers and pistols; that "Bob" Collier was at the time the acting head of the rum-running conspiracy. Harold Ernst testified, against objection of defendants that it was immaterial and hearsay, that he was one of the parties standing on the sidewalk near where the shooting occurred just prior thereto when Collier and Carlozzi drove up in the Chrysler coupe and that Collier came up and asked him how he was and said to him, "Stick around, you will see some fun." He says he did not see witness Anderson. This testimony as to the statement of Collier was used to show Collier was not in the Cadillac car, from which the shooting is said to have been done; that Collier had some idea there was going to be some trouble and the occupants of the Cadillac car were going to do some shooting. If Collier was at the head of the rum-running gang and made the remark in question and those doing the shooting were in conspiracy with him, then this testimony was admissible and it was not error to receive it. Whether the remark, if made, was a statement of an individual outside the scope of the conspiracy and not to be considered by the jury or whether it was a statement of a conspirator during the existence thereof of what was likely to happen was under the circumstances a question for the jury and it was not error to permit the testimony to be admitted and considered.

4. William DeLisle, detective and member of the Blackhand squad of the Detroit police force, searched for the automobile claimed by the people to have been employed by the murderers of Lanstra. DeLisle testified: "We knew where several of the

men lived *who we believed were engaged in rum-running with Salimone* so we started out to search their garages and houses." No objection to the facts found upon the search for the automobiles is here involved. What was and is objected to is permitting a witness to say "We believed certain persons were engaged in rum-running with Salimone." This was not a statement of the witness' belief only, but a statement of the collective belief of the police detective force of the city of Detroit. It was a conclusion of the witness based, if on anything, on undisclosed facts. Clearly the witness could not testify as to what others believed (*Wolverton* v. *Village of Saranac,* 171 Mich. 419), nor express his belief that others were connected with rum-running operations. *People* v. *Row,* 135 Mich. 505. His testimony should have been limited to the facts which, if competent, relevant and material, could have been laid before the jury. It was for the jury to draw conclusions from the facts and not for the witness. *Zube* v. *Weber,* 67 Mich. 52; *Merrill* v. *Leisenring,* 166 Mich. 219; *Johnson* v. *Union Carbide Co.,* 169 Mich. 651.

Reception of this testimony was clearly error but we cannot say on this record it was sufficiently prejudicial to alone warrant a reversal of the case.

5. Appellant was placed upon the witness stand and on cross-examination was asked whether he had ever been indicted for a violation of the Federal narcotic law. He testified he had not been so indicted. A certified copy of the indictment against appellant was introduced in evidence to impeach him. In people's brief it is said:

*"If the witness is asked, on cross-examination, whether he has ever been arrested or indicted,* the cross-examiner is bound by his answer, and may

not, by other witnesses, show that the witness has been, in fact, arrested or indicted. A witness may not be impeached on collateral matters. Thus, in the case at bar, even though it can be shown by the records of the district court of the United States that Dellabonda, while on the stand as a witness, deliberately perjured himself by denying that he had been indicted in that court, the rule against collateral attack protects him and bars proof of his falsehood. The position, while anomalous in this case, is, in our opinion, nevertheless *sound*."

It is settled that a witness may not be impeached on a collateral matter. *Mills* v. *Warner,* 167 Mich. 619; *People* v. *Cutler,* 197 Mich. 6. It is improper to try collateral issues, not directly involved, diverting the attention of the jury from the essential elements of the case on trial, compelling parties who are witnesses to meet issues they have no reason to anticipate will be raised. *Kingston* v. *Railway Co.,* 112 Mich. 40 (40 L. R. A. 131).

The important question is whether the reception of this certified copy of indictment against appellant was prejudicial. The question of defendant Salimone selling "dope" had previously been injected into the case on the cross-examination of Salimone; there was testimony that Dellabonda had been picked up by the narcotic squad and though from the standpoint of logic the testimony was only admissible for the purposes of impeachment, it is evident if appellant was charged with a violation of the criminal law in relation to narcotics it was probable he would not hesitate to engage in the illicit traffic of liquors.

6, 8. Joseph Sandley at the time of the shooting was a member of the Grosse Pointe police force and he says a witness of the shooting. In the regular

course of his duty he immediately afterward made a report in writing to his superior officer, the superintendent of police, Mr. Drysdale. This statement in writing made by the witness was present at the examination of defendants. Sandley was there sworn as a witness and described the shooting. On the examination it appeared witness had made a report in writing to his chief. Defendants' counsel asked to see it. It was objected that defendants' counsel was not entitled to see the report of the witness unless the witness used it to refresh his recollection. It was claimed it was a confidential police record not open to the public. After some discussion the examining magistrate disposed of defendants' demand as follows:

"Unless the officer used the statement to refresh his recollection as to what he put in that statement, you are not entitled to see it. If he did use that statement and then got on the witness stand and so testified after refreshing his memory, then you are entitled to it. If he didn't, you are not. I am absolutely sure I am right so far as the law is concerned."

On objection of the assistant prosecuting attorney the written report of the witness to his chief present in court was not only excluded but defendants' counsel was denied access to it.

When the people's witness Sandley, the Grosse Pointe policeman who witnessed the shooting, was on the stand on the trial defendant sought to have produced the written statement made by him immediately after the shooting, in the line of his duty, to his superior officer, Chief Drysdale.

Upon objection of the people, such statement was excluded. A demand had been made for the produc-

tion of this statement on the examination, and it was again demanded on the trial and excluded by the court, not on the ground of the insufficiency of the notice, but on the ground it was not in evidence at the examination, was not in evidence in the case, that the witness had testified on two or three different occasions, and

"If his testimony is at variance, that is a matter of argument as to his credibility. He has testified he did not do this report to refresh his memory, and it is therefore inadmissible, or rather at least, its contents is inadmissible, and so unless the prosecuting attorney voluntarily offers the statement to the counsel for the defendant, this will be the court's ruling. * * *

"The contents of the report are inadmissible without the prosecutor gives it to you voluntarily, I won't order him to. * * *

"*Mr. Maiullo:* Now, if it is lost, your honor, have I then the right to show its contents?

"*The Court:* No, sir, not under my ruling."

This is the basis of assignment of error No. 6.

Assignment of error No. 8 relates to the refusal of the court to charge the jury as requested by defendants in their requests to charge Nos. 17, 26 and 27. These requests were as follows:

"17. I further charge you, members of the jury, that the State's interest in a criminal case is that the accused shall be acquitted unless upon all the facts they are seen to be guilty; and if there shall be in the possession of any of its officers, information that can legitimately tend to overthrow the case, made for the prosecution, or to show that it is unworthy of credence, the defense should be given the benefit of it.

"26. * * * When Joseph A. Sandley presented to Chief Drysdale his written statement of the facts

of June 1, 1930, and he now swears to facts altogether different, it may well be argued that he is unworthy of belief, and the State has no interest in interposing any obstacle to the disclosure of the facts, unless it is interested in convicting accused parties on the testimony of untrustworthy persons. That the State should have no such interest; its interest is that accused parties shall be acquitted unless upon all the facts they are seen to be guilty.

"27. * * * If there shall be in the possession of any of its officers information that can legitimately tend to overthrow the case made for the prosecution, or to show that it is unworthy of credence, the defense should be given the benefit of it and that it is the duty of the State to produce it."

(a) It is suggested the proper way to introduce the report of a witness to his superior officer was by way of impeachment by first laying the foundation for such impeachment by asking the witness appropriate questions. It is well settled the same questions must be asked the witness subject to be impeached as are asked of the impeaching witness. *Smith* v. *People,* 2 Mich. 415; *Rice* v. *Rice,* 104 Mich. 371; *Monroe Lumber Co.* v. *Bezeau,* 192 Mich. 307; *Koehler* v. *Buhl,* 94 Mich. 496. This rule does not apply here where the prior statement of the witness in writing was under the control of, or within the knowledge of, the prosecution, and where neither defendant nor his counsel were permitted to have access to it, to learn its contents, or to introduce it in evidence.

(b) One of the elementary principles of cross-examination is that the party having the right to cross-examine has a right to draw out from the witness and lay before the jury anything tending or which may tend to contradict, weaken, modify or explain the testimony of the witness on direct exam-

ination or which tends or may tend to elucidate the testimony or affect the credibility of the witness.

Here the witness had made a prior report to a superior officer relating to the occurrences involved on the night of the shooting. Defendants had a right on cross-examination to call out the fact that such statement had been made, to lay the same before the jury, for the purpose of modifying, explaining or contradicting the testimony of the witness. A witness may be impeached by showing on cross-examination the improbability of his story and in no way may such improbability be better established than by showing on cross-examination prior inconsistent statements of the witness. Here the statement of the witness was in writing, not in the possession of the defendant, presumptively in the control of the people, its contents unknown to defendant; and it was clear error not to permit defendant to have all of the witness' prior statements bearing upon the question in issue. To withhold part of his statements was to say to defendant and to the jury "You must be content with part of the truth and not the whole truth in relation to the question in controversy."

(c) The only legitimate object of the prosecution is to show the whole transaction as it was, whether its tendency is to establish the guilt or innocence of the accused. *Hurd* v. *People*, 25 Mich. 405; *People* v. *Etter*, 81 Mich. 570. A public prosecutor has no right to suppress testimony. *Wellar* v. *People*, 30 Mich. 16. It is the duty of the prosecuting attorney to furnish all the evidence within his power bearing upon the issue of guilt or innocence in relation to the main issue or to give some good excuse for not

doing so. *People* v. *Swetland,* 77 Mich. 53; *People* v. *Germaine,* 101 Mich. 485.

"Whenever it may appear evident to the court that but a part of the facts, or a single fact, has been designedly selected by the prosecution from the series constituting the *res gestæ,* or entire transaction, and that the evidence of the others is within the power of the prosecutor, it would, I think, be the duty of the court to require the prosecutor to show the transaction as a whole. * * * It was clearly competent for the defendant to show the rest of the transaction, whether known to the prosecution or not." *Maher* v. *People,* 10 Mich. 212 (81 Am. Dec. 781).

(d) The report of the witness to his superior officer was made when the facts were fresh in the memory of the witness, unaffected by publicity or the suggestions of others. It is conceded it covered the same transaction about which the witness testified. It was clearly admissible, if for no other purpose, as bearing upon the credibility of the witness (*People* v. *Baker,* 112 Mich. 211); it being competent to contradict the witness if possible by proving on cross-examination his prior inconsistent statements. 1 Wharton's Criminal Evidence (10th Ed.), § 482. It was competent to call out on cross-examination what the witness had said in his official report or otherwise upon the particular subject or facts about which he had testified. *People* v. *Warren,* 122 Mich. 504 (80 Am. St. Rep. 582); *Lichtenberg* v. *Mair,* 43 Mich. 387. Appellant was entitled to have placed before the jury the report of the transaction officially made by the witness as to what happened at the time, and to a full and searching cross-examination as to what the witness said and did in relation

to the things testified about by him. *People* v. *Liphardt,* 105 Mich. 80; *Bulen* v. *Granger,* 58 Mich. 274; *Marquette, H. & O. R. Co.* v. *Langton,* 32 Mich. 251. The rule is thus stated in *Detroit & Milwaukee R. Co.* v. *Van Steinburg, supra:*

"When a party places a witness upon the stand to testify to facts which tend to support his side of the issue involved, and questions him concerning such facts, it is the right of the opposite party, on cross-examination, to go as fully into the subject as may be necessary to draw from the witness all he may know concerning the transaction about which he has testified, and to put before the jury any pertinent facts which will have a tendency to controvert the testimony which has been given by the witness in favor of the party calling him. A more restricted rule renders cross-examination in many cases nearly valueless, and enables a party, by careful questions to his witness, to give to the jury a one-sided and partial view of the facts within the knowledge of the witness, and effectually to preclude the opposite party from supplementing the witness's statement with the further facts within his knowledge concerning the same transaction, unless he shall make the witness his own, in which case he is supposed to vouch for him as credible, and has also less privilege of searching examination."

Cross-examination on matters in issue or directly relevant to the issue is a matter of right. Its exclusion is error. 5 Jones, Commentaries on Evidence (1st Ed.), § 842. As pointed out by this court, cross-examination is a mere farce if the cross-examining party has not the right to show on cross-examination by the witness just what the transaction was and was said to be. *Chandler* v. *Allison,* 10 Mich. 460; *Thompson* v. *Richards,* 14 Mich. 172;

*Detroit & Milwaukee R. Co.* v. *Van Steinburg, supra; Wilson* v. *Wagar,* 26 Mich. 452.

"All testimony elicited on such cross-examination, consisting, as it does, of facts which, though relating to the direct examination, may have been omitted or concealed in that examination, or facts tending to contradict, explain or modify such facts, or to rebut or modify some inference which might otherwise be drawn from them, must in the nature of things, constitute a part of the evidence given in chief; and both alike and together, must, therefore, be treated as evidence given on the part of the party calling the witness." *Wilson* v. *Wagar, supra.*

See, also, *Schratz* v. *Schratz,* 35 Mich. 485.

The conduct of the prosecution in preventing the introduction of the written statement of the witness Sandley to his superior officer or evidence of its contents made in the line of his duty immediately after the commission of the alleged offense was error. If drawn out it would have been a part of the testimony of the people and for the people to suppress material testimony in writing in relation to the most vital part of the controversy is not commendable.

This report, if produced and introduced, was a part of the witness's testimony and the people had no right to suppress it or to suppress proof of its contents. The witness testified on the examination in which the report was suppressed that if he had the report before him he could give the facts just as he saw them and on the trial the witness remembered he so testified on the examination. In view of all this, it is certainly peculiar the people did not want the facts laid before the jury just as the witness saw them; and, on trial, that they insisted on

excluding parol proof of the contents of the paper made by the witness which if he had it before him would have enabled him to give the facts just as he saw them. Why was not defendant entitled to this? The witness testified in effect the report was true when made and if so it was competent, relevant, and admissible. *Fisher* v. *Kyle,* 27 Mich. 454; *Spalding* v. *Lowe,* 56 Mich. 366; *Koehler* v. *Abey,* 168 Mich. 113; *Rice* v. *Fidelity & Casualty Co.,* 250 Mich. 398. It was not permitted to be produced and parol evidence of its contents was excluded. This was clear error. *Brandt* v. *C. F. Smith & Co.,* 242 Mich. 217; *Barber-Greene Co.* v. *Proksch,* 251 Mich. 329. As said in *People* v. *Davis,* 52 Mich. 569:

"The State has no interest in interposing any obstacle to the disclosure of the facts, unless it is interested in convicting accused parties on the testimony of untrustworthy persons. But surely the State has no such interest; its interest is that accused parties shall be acquitted unless upon all the facts they are seen to be guilty; and if there shall be in the possession of any of its officers information that can legitimately tend to overthrow the case made for the prosecution, or to show that it is unworthy of credence, the defense should be given the benefit of it. There was, therefore, no privilege to preclude the giving of the testimony for which the defense called."

If defendant called out a part of a conversation with an injured party on examination by a physician plaintiff was entitled on cross-examination to the whole conversation. *Joslin* v. *Grand Rapids Ice & Coal Co.,* 53 Mich. 322. A witness may be cross-examined as to his statements made to third persons which were contrary to his testimony to bear upon his credibility. *People* v. *Baker,* 112 Mich. 211. The defendant had a right to call out on cross-ex-

amination from the witness what he said upon the
subject of the shooting. *Lichtenberg* v. *Mair, supra;
People* v. *Warren, supra.* He was entitled to the
witness's version of the whole transaction, not only
in accordance with his testimony but in accordance
with what he reported it to be at the time when he
made his report, and to a full and searching cross-
examination as to all the witness did in reporting
the offense to his superior officer. *People* v. *Lip-*
*hardt, supra; Bulen* v. *Granger, supra.*

(e) In *McCullough* v. *McCullough,* 12 Ind. 487,
suit was brought on an award of arbitrators. It
appeared a paper relating to an item in dispute had
been signed by the arbitrators. The court held the
principal reason for placing the writing in the hands
of the witness and subjecting it to examination was
to ascertain whether he executed it and to give him
an opportunity to note its contents, to enable him
to explain discrepancies, if any, between his testi-
mony and his prior statements in writing. The court
said:

"We are of opinion that, under the circumstances
of this case, the ruling of the court, in excluding
the evidence offered, was erroneous.   *   *   *   If it
was not evidence of the substantive facts stated in
it, which we need not decide, it was clearly such as
might be considered by the jury, in determining the
relative value of the testimony, and the weight that
ought to be given to each witness who had testified
upon the point, upon which they had made a state-
ment, whilst the facts from which they had written
that statement were yet fresh in their memory."

In *Romertze* v. *East River National Bank,* 49
N. Y. 577, it is said:

"The only question of law which seems to deserve
attention relates to the attempt to prove that the

witness Newell, called by the defendant, had made statements on another occasion inconsistent with those testified to by him on the trial.''

In disposing of this question the court said:

''The result of all the authorities is that it is sufficient for a party, proposing to impeach a witness by proving inconsistent written statements, to show him or read to him the paper, and, if its genuineness is admitted, to introduce it, when he has a right to put in evidence; and that it is not the legal right of the other party or the witness to enter into any explanation of the contents of the paper until after it has been introduced in evidence. The court may doubtless permit the explanation in the first instance, and may vary the order of proof in this as in many other cases for the purpose of eliciting truth and preventing injustice. Many questions of this character are within the discretion of the court; but here the plaintiff pursued the usual and legal course. The witness admitted the genuineness of the paper and knew its contents. His attention was sufficiently called to it. Neither he nor the defendant asked the privilege of explanation, nor demanded the reading of the paper. The plaintiff offered the paper at the right time, and it was error to reject it.''

If the statement was in existence and in possession of the prosecution it was the duty of the prosecuting attorney to produce it.

(f) In *Freel* v. *Railway Co.,* 97 Cal. 40 (31 Pac. 730), it appeared that an employee of the defendant company had made an investigation and report of an accident. This statement was in the possession of defendant's counsel. The employee had been sworn as a witness. Plaintiff demanded the state-

ment and the court refused to order it to be produced. In reversing the case the court said:

"This statement was in the possession of defendant's counsel upon the trial, and indeed was lying upon the desk before him when the demand in question was made. The plaintiff could not, in the nature of things, know the contents of this paper. It is not claimed that she had ever seen it, nor had it ever been in her possession. It was produced for the first time by defendant's counsel. To sanction the rule claimed by the defendant in this case would enable a litigant to suppress adverse evidence of the most important character. Here the plaintiff had a right to show, by way of the impeachment of the defendant's witness, that he had on another occasion made a statement inconsistent with his present testimony. The law provides that where such statement is in writing, it *must be shown* to the witness, and an opportunity afforded to the latter to explain it. Upon defendant's theory, if he were permitted to retain this paper in his possession, so that the plaintiff's counsel could not, on cross-examination, show it to the witness for the purpose of impeaching him, it would be impossible, under similar circumstances, to impeach any witness."

"It may be laid down as a general rule applicable to all jurisdictions that when a document is properly sought as evidence to be used upon the trial of a cause its production will always be enforced. The production of a document may be required for the impeachment of a witness." 4 Encyclopædia of Evidence, pp. 812, 813.

In *People, ex rel. Germania Fire Insurance Co.,* v. *Newaygo Circuit Judge,* 41 Mich. 258, the circuit judge, on motion of defendant, ordered plaintiff to produce certain documents and mandamus was brought to compel the circuit judge to set aside the

order. This court denied the writ, saying: "If the papers called for are in existence, we may well see that they may be very important to the defense."

(g) It was proper for counsel for the defense to call the former assistant prosecuting attorney, who conducted the examination and knew the contents of the statement, to show not only the existence of the paper and that it was lost, but to show its contents. *Coveney* v. *Tannahill,* 1 Hill (N. Y.), 33 (37 Am. Dec. 287). This court is firmly committed to the doctrine of *Queen's Case,* 2 Brod. & Bing. 284, 286 (129 Eng. Repr. 976), which case is the basis of the rule stated in 1 Greenleaf on Evidence (16th Ed.), § 463, that it would be unfair to cross-examine a witness as to the contents of a writing made by him until the jury were informed of the precise contents of the writing, and thus warned against assuming contradictions that do not really exist and which would also be unfair to the witness because he may have explanations which would not occur to him until his memory had been refreshed by hearing the paper read. *Lightfoot* v. *People,* 16 Mich. 507; *Hamilton* v. *People,* 29 Mich. 195; *Toohey* v. *Plummer,* 69 Mich. 345; *DeMay* v. *Roberts,* 46 Mich. 160 (41 Am. Rep. 154). In this case the people were in possession of the paper if it existed. It had never been in the possession of appellant. Neither he nor his counsel had any knowledge of its contents. It would not, therefore, be possible to place the paper before the jury or to present it to the witness until such time as it was produced. It is conceded the paper was lost. The defendant offered to prove by secondary evidence its contents. This he was clearly entitled to. If the paper had been produced it not only would demonstrate its existence but it would effectually foreclose any controversy as to its contents. *Stevens* v. *Hope,* 52 Mich. 65. The

fact that the policeman made the statement in writing immediately after the occurrence reported when the incidents connected therewith were fresh in his memory, to his superior officer, only emphasizes the importance of the statement and the probability of its containing a correct narration of the facts. This report obtained no sacredness because it was made and filed by a public officer. The jury were entitled to have the statement placed before them and in case of its loss to have secondary evidence of its contents placed before them in order that they might make a comparison of the statements found to have been made in writing and the testimony of the witness and determine if and to what extent the contents of the statement tended to affect the credibility of the witness. The court was in error in his ruling. Appellant was entitled to know what the witness said in the report and why he said it. This ruling was prejudicial to defendant.

7. Assignment of error No. 7 relates to the failure of the court to charge the jury upon the question of circumstantial evidence and its application as requested in defendant's requests to charge numbered 28, 29 and 30 as follows:

"28.  *  *  *  You are to take this testimony and harmonize it; it is your duty to harmonize it if possible with the innocence of the accused, because under the law, it is the duty of the jurors in every criminal case to enter upon the trial of the case with the presumption of innocence and harmonize all the testimony in the case in accordance with the presumption that the defendant is innocent.

"29.  *  *  *  Where two conclusions can be drawn, one tending to establish guilt and the other tending to establish innocence, it is your duty to accept the conclusion tending towards innocence and acquit the defendants.

"30. I further charge you, members of the jury, that it is necessary for the prosecution to show, under all circumstances, as a part of their own case, that there is no innocent theory possible which will, without violation of reason, accord with the facts proven in the case. Circumstances are never to be presumed. Each fact making up the chain of circumstances must be proved beyond a reasonable doubt, and if the prosecution fails to prove any one link making up the chain of circumstances, it is your duty to find the defendants, Nick Dellabonda and Frank Salimone, not guilty."

Counsel for appellant say:

"These three requests represent different phases of the same principle; they are simply different expressions of the same idea. The principle may be briefly stated. In arriving at a verdict based upon circumstantial evidence, the jury must first be satisfied that each of the circumstances, or facts from which the inference of guilt or innocence is to be drawn, are established beyond a reasonable doubt, and they should exclude from their consideration any circumstances which are not so proved. If the prosecution fails to prove beyond a reasonable doubt any one link in the chain of circumstances, the jury should acquit the defendant. If the prosecution fails to prove circumstances which exclude every reasonable hypothesis except the guilt of the defendant, the jury should acquit him."

The rules applicable to the consideration of circumstantial evidence are stated in 3 Thompson on Trials (2d Ed.), §§ 4974–4985, and in 16 C. J. pp. 762, 767.

In *People* v. *Foley*, 64 Mich. 148, the court charged:

"It is necessary for the prosecution to show, under all circumstances, as a part of their own case, that there is no innocent theory possible which will,

without violation of reason, accord with the facts proven in the case. Circumstances are never to be presumed. Each fact making up the chain of circumstances must be proven beyond a reasonable doubt; and, if the prosecution fails to prove any one link making up the chain of circumstances, the prisoner ought not to be convicted.''

This charge was approved by this court.

In *People* v. *McArron*, 121 Mich. 1, defendant requested the court to charge:

''The prosecution claim that the evidence in this case is made up of a chain of circumstances and facts, or links, so connected together that they lead up, with all reasonable certainty, to the defendant's guilt. Gentlemen, I charge you that, in order to convict the defendant upon this class of evidence, you must be satisfied beyond a reasonable doubt that each material fact, or necessary link, in the chain, has been proven, and, if you have any reasonable doubt about any one of the material facts, or links, constituting the chain of circumstances, then you should acquit the defendant. To illustrate, the first material fact or link is death. That is not disputed. Second, death by violence by the hands of some person. That is disputed. Third, death by violence by the hand of the defendant. That is denied by the defendant. If you have any doubt of whether or not the defendant inflicted any blow on the deceased, then it is your duty to acquit him. If you have any doubt that the blow claimed to have been inflicted by the defendant was the sole cause of the death of the deceased, it is still your duty to acquit him.''

This request was refused by the trial court but this court said it should have been given and set aside defendant's conviction.

The trial court fully charged the jury on the subject of murder and its essential elements. It was claimed by the people, officer Lanstra was killed in

pursuance of a conspiracy to which appellant was a party. The trial court correctly charged on that subject. He defined the essential elements, each of which he charged must be proved beyond a reasonable doubt as follows:

"Now with those definitions in mind, what are the elements, each and every one of which must be proved beyond a reasonable doubt in order for you to find the accused guilty of the offense of murder, which is in this information charged against them.

"*First*, that it was committed on the 1st day of June, 1930.

"*Second*, that it was committed within the corporate limits of the county of Wayne.

"*Third*, that the accused, either or both of them, committed an assault upon the person of Claude Lanstra. By an assault I mean an intent or offer with force and violence to do bodily hurt to the person of that other.

"*Fourth*, that in committing that assault, the accused used a certain dangerous and deadly weapon or weapons, and that in the commission of the assault they inflicted upon the body of Claude Lanstra certain mortal wounds.

"*Fifth*, that as a direct result of the wounds so inflicted Claude Lanstra, who on the 1st day of June, 1930, was alive, as a direct result of the wounds so inflicted upon him in said assault, met his death.

"*Sixth*, that this assault was committed with the intention, upon the part of the defendants, of taking the life of Claude Lanstra.

"*Seventh*, that it was committed with malice aforethought, which term I have fully defined.

"*Eighth*, that before the assault was committed that it was premeditated, and I have defined that term to you."

He correctly defined "reasonable doubt." Many comparisons between circumstantial evidence of

facts and links in a chain have been used in charging juries. At best these are blanket statements. It is not each and every fact claimed that must be proven beyond a reasonable doubt, but as the trial court charged, each and every essential element of the offense charged against defendants. While cautionary instructions as to the use of circumstantial evidence. may be given, we think appellants' rights were protected by the charge herein. Cautionary instructions should be given in all cases where the guilt or innocence of the defendant depends entirely upon circumstantial evidence.

"The charge is required to be given only where the case rests solely and alone upon circumstantial evidence; that is to say, where the main fact, or gravamen, of the offense, or act of the crime rests upon circumstantial evidence alone." 3 Encyclopædia of Evidence, p. 64.

It is not the particular facts and circumstances claimed by the people that must be proved beyond a reasonable doubt, but the essential elements of the crime charged that must be so proved. In this case the trial court so charged. We find no reversible error in the failure of the trial court under the circumstances to give the requests last-above quoted.

For the errors pointed out, conviction is reversed and new trial ordered.

McDonald, C. J., and North, Fead, and Butzel, JJ., concurred with Potter, J.

Weadock, J. (*concurring*). I concur in the result only because the statement of the policeman, Joseph Sandley, was not permitted by the court to be produced by the people on the trial for whatever weight it would have in affecting his testimony.

Wiest, J., concurred with Weadock, J.

SHARPE, J. (*dissenting*).  I cannot concur with Mr. Justice POTTER in holding that the errors pointed out by him were so prejudicial to the rights of the defendant as to necessitate the reversal of the conviction of the defendant Dellabonda.  Two policemen were fatally wounded on the occasion in question.  Officer Lanstra met his death from bullets fired by three men in a Cadillac car, and the evidence submitted justified the jury in finding that one of these men was Dellabonda.

The file from the Federal court was introduced in evidence to show that Dellabonda had been indicted for a violation of the anti-narcotic law.  This but affected his credibility as he had, on cross-examination, denied that he was.  Had this been the only evidence submitted for that purpose, its effect upon the jury might be strongly urged.  But, upon his cross-examination, he testified:

"I was not arrested and convicted of receiving stolen property in 1917 before Judge Heston.  * * * I was never in Judge Heston's court and do not know Judge Heston.  I never plead guilty to anything before Judge Heston."

The journal of the recorder's court, signed by Judge Heston, was put in evidence, and disclosed that in 1917 the defendant was charged with receiving stolen property and "fined $40 and $10 costs or 30 days in the Detroit House of Correction."

He also testified that he had not been arrested on January 13, 1927, but afterwards admitted that he had been.

He also testified that on the night when the murder was committed he went with his wife to a theater and then to their home, and it was clearly established that the show they there claimed to have attended was not on exhibition at that time.

In view of this evidence, it cannot well be said that his credibility was affected by the proof of the indictment.

"Assuming that the testimony complained of was inadmissible, its admission does not constitute reversible error, because there was other evidence on the same subject sufficient to establish the fact" that he was unworthy of belief. *People* v. *Nelson,* 244 Mich. 679, 681.

Joseph Sandley, a police officer, testified twice on the preliminary examination. He first stated that he recognized none of the men in the car. He next stated that the defendant was in a Chrysler car, immediately in the rear of the Cadillac, and that he made a report in writing of such fact to his chief. Upon the trial he testified that the defendant was in the Cadillac car. On cross-examination he stated:

"I know what I am telling now is entirely different to what I told in my statement."

It is conceded that the statement was lost. I am unable to see how the defense could have been in any way benefited by evidence of its contents in view of this admission on his part.

Certain witnesses had testified as to Dellabonda's connection with certain rum-running activities at the foot of Pemberton avenue in the early morning hours of June 1, 1930, and that shots had been fired by an officer of the United States Custom Border Patrol for the purpose of disabling a car in which some of the parties were escaping. Anderson testified that he and others heard these shots, and soon after saw one car apparently pursuing another. He and two men with him got into a car and drove around "to see if we could see anything of these two cars," and soon after parked their car in front of what is known as the "White Tower," and, while

standing near there and conversing, some person said, "There they are," and thus called attention to two cars, one of which was a closed Cadillac coupe, which stopped near them. He testified that each of the men in this car had a revolver in his hand, and that he had "no doubt" that one of these men was the defendant Dellabonda. The shots soon after fired from this car caused the death of one of the policemen.

Under these facts I do not see how it can be said that what the bystander said ("There they are") was not properly received in evidence, or, if inadmissible, was prejudicial to Dellabonda. Its only effect was to call the attention of those who heard it to the approaching car and cause them to be observant of what afterwards occurred. The expression had reference only to the cars theretofore seen, and which Anderson and those with him had tried to locate.

In *Hitchcock* v. *Burgett,* 38 Mich. 501, an action against a doctor for malpractice, a witness who was present when the defendant examined the plaintiff's leg testified that he heard a grating noise when the doctor moved the leg, and that somebody standing by spoke of it. The court said:

"The remarks made on such an occasion are not statements of a past transaction, but of one actually taking place at the time they are being made. Such remarks are likely to call the attention of others present to the sounds heard, and to correctly determine the nature and character of them, and how they are caused or from whence they proceed, and cause a deeper and better impression to be made upon the minds of those present as to what was actually heard."

This question is discussed at some length in Wigmore on Evidence (2d Ed.). In volume 3, § 1791, it is said:

"Utterances that have served to induce the observation of a particular fact, or to fix the recollection of it, are also receivable, without regard to their assertive value, as not obnoxious to the hearsay rule."

See, also, *Angell* v. *Rosenbury,* 12 Mich. 241; *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich. 99.

No error is assigned upon the remarks of the prosecuting attorney, nor do counsel discuss the question in their briefs. He was in error in using the statement "This is the follow car" instead of "There they are," but no objection was made thereto, and, if deemed material, it was doubtless corrected by the argument of the attorney for the defense which followed it.

The jury were impaneled and trial of this case begun on November 19, 1931. The verdict was rendered on December 21st of that year; 103 witnesses were examined, 82 on the part of the prosecution and 21 for the defendant. It is seldom, indeed, that a trial lasting for such a length of time can be conducted without errors appearing. Those discussed cannot fairly be said to have been prejudicial to the defendant.

In my opinion, the conviction and sentence should be affirmed.