PEOPLE *v* RAHAR

CRIMINAL LAW—DEFENDANT TESTIFYING—IMPEACHMENT—PRIOR CONVICTIONS.

> Prosecutor's repeatedly questioning a defendant, charged with an illegal sale of heroin, whether the defendant had a prior conviction for possession of dangerous drugs and the prosecutor's compounding his error by asking the defendant if he had been arrested for possession of an opium pipe and other apparatus was reversible error where the defendant denied the conviction and the prosecutor made no attempt to establish that the defendant, had, in fact, been convicted of that offense where the determination of defendant's credibility was of critical and material importance in that the prosecu-

REFERENCE FOR POINTS IN HEADNOTE
29 Am Jur 2d, Evidence § 320 *et seq.*

tion's chief witness testified that he purchased heroin from defendant and the defendant denied the sale.

Appeal from Ingham, Jack W. Warren, J. Submitted Division 2 October 14, 1971, at Lansing. (Docket No. 10147.)    Decided January 18, 1972.

Anthony Rahar was convicted of illegal sale of narcotics.    Defendant appeals.    Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodeller,* Prosecuting Attorney, and *James R. Ramsey,* Assistant Prosecuting Attorney, for the people.

*Benjamin F. Gibson,* for defendant on appeal.

Before: McGregor, P. J., and Holbrook and Van Valkenburg,* JJ.

McGregor, J.    Defendant was tried by a jury and convicted of sale of heroin, contrary to MCLA § 335.152 (Stat Ann 1971 Rev § 18.1122), sentenced to serve not less than 20 years nor more than 30 years in prison, and appeals after a motion for a new trial was denied by the trial court.    On appeal, defendant alleges numerous errors committed by the trial court.

The first contention is that it was prejudicial and reversible error for the prosecutor to cross-examine defendant concerning his prior criminal record.    By statute,[1] the prosecutor has the right to cross-exam-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA § 600.2158 (Stat Ann 1962 Rev § 27A.2158) provides that: "No person shall be excluded from giving evidence on any

ine a defendant concerning his prior criminal convictions for the purpose of assisting the jury in determining defendant's credibility, when he testifies as a witness in his own behalf.[2] *People* v. *Finks* (1955), 343 Mich 304; *People* v. *Di Paolo* (1962), 366 Mich 394; *People* v. *Koontz* (1970), 24 Mich App 336; *People* v. *Cook* (1970), 24 Mich App 401.

However, even though a prosecutor may, for the purpose of impeachment, cross-examine a testifying defendant with respect to his prior criminal convictions, such cross-examination must be properly conducted. In *People* v. *Di Paolo, supra,* the defendant claimed that the prosecutor exceeded the permissible scope of cross-examination, thereby depriving him of a fair trial. In that decision, the Court quoted from the trial record as follows:

" '*Q*. All right. Now, you testified you had been in Erie, Pennsylvania, in 1950, is that correct?

" '*A*. Yes, sir.

\*　\*　\*

" '*Q*. You also testified you had been convicted of only 1 crime, is that correct?

---

matter, civil or criminal, by reason of crime or for any interest of such person in the matter, suit, or proceeding in question, or in the event of such matter, suit, or proceeding, in which such testimony may be offered, or by reason of marital or other relationship to any party thereto; but such interest, relationship, or conviction of crime, may be shown for the purpose of drawing in question the credibility of such witness, except as is hereinafter provided."

[2] It should be noted that this "right" to cross-examine a witness concerning his prior criminal convictions may be limited when the prejudicial effect of the evidence elicited outweighs its probative value. In *People* v. *Eldridge* (1969), 17 Mich App 306, 312, this Court stated: "[W]e are persuaded that the witness' prior conviction was so highly prejudicial to defendant that it should not have been admitted for impeachment purposes. [I]f certain evidential material, having a legitimate probative value, tends nevertheless to produce also, over and above its legitimate effect, an unfair prejudice to the opponent, or by virtue of the personality of the witness tends to receive an excessive weight in the minds of the tribunal, there is good ground for excluding such evidence, unless it is indispensable for its legitimate purpose.' 6 Wigmore on Evidence (3rd ed), § 1864, p 491."

" '*A.* Yes, sir.

" '*Q.* I will ask you whether or not on the 23rd day of November, 1940, you were convicted of rape in Erie, Pennsylvania?

" '*A.* I was no convicted. I,—this is very important to me to make statement about this. I,—

" '*Q.* The answer is either "yes" or "no".

" '*A.* No, sir.

" '*Q.* So if the police records show that, they are wrong?

" '*A.* Yes, sir.'

"After some further questions relating to defendant's past conduct counsel again referred to the alleged offense in Pennsylvania, and the following occurred:

" '*Q.* You deny the rape in Pennsylvania?

" '*A.* No deny. I was find no guilty. No rape.

" '*Q.* So if the record shows you were convicted of rape in Pennsylvania, then this record is wrong?

" '*A.* Yes, sir.' "

The Court then ruled as follows:

"No attempt was made by the people to establish that Di Paolo had in fact been convicted of the crime of rape in the State of Pennsylvania. The question asked, coupled with the reference to the police records, was well calculated to cause the jury to conclude that such conviction had occurred and that police records showed such to be the fact. The jury might have concluded from the questions of the assistant prosecutor, and the subsequent repetition thereof, that appellant was falsifying with reference to the commission of a very serious crime in another State. As before stated, he denied his guilt of the offense charged against him in recorder's court, his statements being directly in contradiction to the testimony of the principal witness against him, the alleged prostitute. Obviously the determination as to appellant's credibility was of material

importance. The conclusion may not be avoided that the question asked and repeated with reference to the police records constituted prejudicial error requiring the reversal of the conviction and the granting of a new trial. *People* v. *Jones* (1940), 293 Mich 409." *Di Paolo, supra,* 396, 397.

In the instant case, the defendant took the witness stand to testify in his own behalf. During cross-examination, the prosecutor questioned the defendant as follows:

"*Q.* Isn't it true, Mr. Rahar [*the defendant*], that in 1969 in San Francisco, California, that you were convicted of the charge of possession of restricted dangerous drugs?

"*A.* No, it is not.

"*Q.* [*defense counsel*]: Your Honor, may I approach the bench?

"*A. The Court:* You may.

(*Whereupon both counsel approached the bench and a discussion was held off the record and out of the hearing of the court reporter.*)

"*The Court:* We'll excuse the jury to the jury room for just a few moments."

Then, in the absence of the jury, the trial court permitted the prosecutor to "explore this line of questioning." During this "separate" hearing, the defendant testified as follows:

"*Q.* * * * Isn't it true, Mr. Rahar, that in 1969 you were found guilty of receiving—excuse me, of possession of restricted dangerous drugs in San Francisco, California?

"*A.* No, it is not true.

"*Q.* Is it true, Mr. Rahar, that you were arrested on March 8, 1969, in San Francisco, California on a charge of possession of an opium pipe, etc.?

"*A.* It is true I was arrested on that date, but, not for the charge you just mentioned, an opium pipe.

"*Q.* Well, is it true, Mr. Rahar, that you were arrested on a charge of possessing restricted dangerous drugs on March 8, 1969?

"*A.* I was arrested on March 8 for being in the presence of this bust. I was in the room, four people in the room to be exact.

\* \* \*

"*Q.* What was the penalty?

"*A.* Penalty? I wasn't convicted of possessing any drugs. I was found guilty of being in an illegal establishment.

"*Q.* Illegal in what sense? Or don't you recall?

"*A.* There were drugs present in the establishment. \* \* \*

"*Mr. Gibson* [*defense attorney*]: \* \* \* Is it true that it was your information that the first charge, possession of dangerous drugs, was stricken from the record or expunged from your file?

"*A.* That's true. The judge told me in the court room that I was guilty of being in an illegal place because drugs were present and there was no possession charge whatsoever.

\* \* \*

"*The Witness:* I was going to explain the rest, your Honor, because the judge made mention of the fact that I was under 21 and after the time was served my record would be sponged [*sic*], as she called it, which means it would be taken off my record because of the fact that I was under 21.

\* \* \*

"*The Court:* Did you ever come by any sort of a certificate or instrument which would have been executed by a court in California I assume informing you that the record was expunged? That is to say, it was held to be a nullity, a void? Have you ever received any such instrument as that?

"*The Witness:* I didn't receive an instrument, I just took it by what the judge had mentioned to me before I left court.

*"The Court:* Well, under these circumstances, Mr. Gibson, I believe that counsel [the prosecutor] is entitled to inquire into this.  *   *   *   It is my recollection of the law that thereafter he may, and I think it's *Dellabonda* [*People* v. *Dellabonda* (1933), 265 Mich 486] that prescribes that he may be prosecuted for perjury. I don't want this individual exposed to that. And under these circumstances, if he believes it was expunged, in the words he has described it, I believe it is a subject matter which the prosecutor may inquire into on the matter of credibility." (*Citation added.*)

The defendant's counsel objected to the trial court's ruling on the grounds that: (1) the defendant's criminal record was a collateral matter and the prosecutor could not impeach a witness on a collateral matter, and (2) the defendant had already testified that he had not been convicted of possession of restricted dangerous drugs. The trial court responded to defense counsel as follows:

"  *   *   *   I think it's the *Dellabonda* case that says if the accused or the witness when asked, were you convicted, answers no, the attorney asking the question is bound by the answer. But he may then, and I think it's *Dellabonda* that says, you explore the possibility of perjury.[3]

"Now, I don't think this witness, I don't think his statement of no is intended with any thought of dodging the issue. His answer of no is based upon an understanding of what a judge told him. But my only purpose, is number one, so that this trial may have a minimum exposure to error, that this be explored in the absence of the jury. And, secondly, that no unfair advantage be taken of your client. I don't want him prosecuted for perjury of his an-

---

[3] *People* v *Dellabonda* (1933), 265 Mich 486, does not hold that, when an accused denies a conviction, the prosecutor may explore the possibility of perjury.

swers in good faith as he indicates[4] and I don't know that there's any more that I can say, but I believe under these circumstances then that the prosecutor is entitled to ask the question, were you arrested and convicted in a certain location."

The jury was returned to the court room and the trial court directed the prosecutor to proceed. The defendant then testified as follows:

"*Q.* * * * Now, Mr. Rahar, is it true that you were found guilty in January of 1969 in San Francisco, California, on a charge of possession of restricted dangerous drugs?

"*A.* It is not true that I was convicted of possession of dangerous drugs."

A few moments later, the court recessed the trial until the following morning. The next morning, June 4, 1970, the defendant returned to the witness stand and the prosecutor continued his cross-examination. The following testimony was transcribed:

"*Q.* Now, Mr. Rahar, didn't you say yesterday, when I asked you the question of whether or not you were convicted in San Francisco, California in 1969 on a charge of possession of restricted dangerous drugs, that your answer to my question as the way it was put was no?

"*A.* That's right. I was not convicted of possession of dangerous drugs.

"*Q.* Could I assume by that answer that if I asked the question differently that your answer would be different?

---

[4] The perjury statute in Michigan (MCLA § 750.423; Stat Ann 1954 Rev § 28.665) provides: "Any person authorized by any statute of this state to take an oath, or any person by whom an oath shall be required by law, who shall wilfully swear falsely, in regard to any matter or thing, respecting which such oath is authorized or required, shall be guilty of perjury, a felony, punishable by imprisonment in the state prison not more than 15 years." Therefore, as stated in 4 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 2003, p 2284: "If * * * the defendant did not wilfully testify falsely, a prosecution for perjury will not lie."

"*A.* You can assume anything you wanted by that answer I guess. I don't know what you could assume.

"*Q.* Yes or no?

"*A.* Yes, I guess you could.

"*Q.* Let me put the question this way, Mr. Rahar: Isn't it true that you were on March 8, 1969, in San Francisco, California, arrested on a charge of possession of an opium pipe and other apparatus?

"*A.* Yes, I was arrested but not convicted of the charge.

"*Q.* It's your testimony that you weren't convicted of any charge?

"*Mr. Gibson:* Your Honor, I think his testimony is quite clear.

"*The Court:* The testimony was of that charge."

Here, just as in *Di Paolo, supra,* the prosecutor's repeated questioning of defendant as to a prior conviction was prejudicial error, where the defendant denied being convicted and the prosecutor made no attempt to establish that defendant had, in fact, been convicted of possession of dangerous drugs.

Furthermore, the prosecutor compounded his error by then asking defendant if he had been arrested for possession of an opium pipe and other apparatus.

In *People* v. *Brocato* (1969), 17 Mich App 277, 302–303, this Court stated:

"We now hold that a defendant testifying at his own trial may not be asked if he has been arrested or charged with a crime, where the arrest or charge has not resulted in a conviction and where the only purpose of the questions is to impeach the defendant's credibility as a witness. Where credibility is the only issue, the probative value of arrests and charges, unsubstantiated by a conviction, is slight at best. When weighed against the great danger that

the jury, despite careful instructions, might misapply such evidence, the scales of justice tip in favor of exclusion. *United States* v. *Beno* (CA2, 1963), 324 F2d 582."

Furthermore, in *People* v. *Council* (1971), 36 Mich App 682, this Court stated:

"In the instant case, the prosecutor continually asked the defendant whether he had been convicted of automobile theft in April 1962. The defendant repeatedly denied it, but the prosecutor continued to question him upon that point. Furthermore, when the prosecutor asked the defendant if he would still deny it if his FBI record showed it, he implied not only that the defendant had an FBI record, but also that he was lying about having committed the automobile theft. When a prosecutor repeatedly uses such tactics, tending to destroy the credibility of the defendant in the minds of the jurors, reversible error is committed. See *People* v. *Jones* (1971), 32 Mich App 309; and *People* v. *Di Paolo* (1962), 366 Mich 394, for situations parallel to the instant case."

Since defendant Rahar testified that he "did not sell any narcotic drug or anything else to Bob Whitmore on that day [January 5, 1970]" and, since the chief prosecution witness Whitmore testified that, on January 5, 1970, he purchased a tinfoil packet of heroin from the defendant, the determination as to defendant's credibility was of critical and material importance. Therefore, we conclude that the improper impeachment of the defendant's credibility cannot be characterized as harmless error.

In view of our conclusion, reached on the principal assignment of error, it is unnecessary to consider the other alleged errors claimed by defendant.

Reversed and remanded.

All concurred.